[No. 12283.    Department One.    May 20, 1915.]

F. R. DUARTE, *Plaintiff,* v. A. MINNICK *et al., Defendants,* NATIONAL BANK OF COMMERCE, *Petitioner and Appellant.*[1]

SALES—CONDITIONAL SALES — NATURE OF SELLER'S INTEREST — ASSIGNMENT OF CONTRACT—RIGHTS OF ASSIGNEE.  The seller of goods under a conditional sales contract retains the absolute title thereto, subject to be defeated by the payment of whatever balance is due upon the agreed purchase price; hence an assignment of the contract to a third party which had been advancing to the vendee the sums due on the contract, purporting to transfer all the interest that the vendor "has ever had in the property," would operate to pass no more than the vendor's defeasible interest for the balance due, which would be extinguished on payment of such balance to the assignee.

SUBROGATION — ASSIGNMENT OF CONDITIONAL SALES CONTRACT — RIGHTS OF ASSIGNEE.  The mere fact that a bank advanced sums of money from time to time as loans to aid a company in making payments on machinery under a conditional sales contract, under an indefinite and uncertain agreement that the bank should have security thereon, which was never consummated in any way, and that the bank finally paid off the balance due on the machinery, receiving an assignment of the conditional sale contract, would not entitle it to be subrogated to the rights of the conditional sales vendor or give it greater rights than those of an unsecured creditor.

Appeal from a judgment of the superior court for Spokane county, Huneke, J., entered May 22, 1914, denying the

[1] Reported in 148 Pac. 600.

right of a creditor as a preferred claimant to property in the hands of a receiver, after a trial to the court. Affirmed.

*Cannon, Ferris & Swan* and *Walter A. White*, for appellant.

*Hibschman & Dill* and *Belden & Losey*, for respondent.

PARKER, J.—The National Bank of Commerce of Spokane seeks to be adjudged a preferred claimant to certain funds which are the proceeds of the sale of certain cold storage machinery, made by the receiver of the Northwestern Cold Storage & Warehouse Company, a receiver having been appointed by the superior court in the above entitled action of Duarte v. Minnick *et al.*, involving the insolvency of that company. The superior court having denied the relief petitioned for by the bank, it has appealed therefrom to this court.

On March 24, 1910, the Armstrong Machinery Company entered into a conditional sale contract with the Cold Storage Company for the sale of machinery for the plant then being constructed by the Cold Storage Company. This contract provided for payments to be made on the machinery from time to time as furnished, and that the title to the machinery so furnished should remain in the Armstrong Machinery Company until it was fully paid for. In our present discussion we assume that this contract was timely placed of record in the office of the auditor of Spokane county. This machinery passed into hands of the receiver with other property of the Cold Storage Company after the completion of the plant, and was thereafter, by consent of the bank, sold by the receiver, with the understanding that the bank's claim to the proceeds of the sale should be of the same legal effect as its claim to the property theretofore made. There is now in the hands of the receiver, as the net proceeds of the sale of the machinery, the sum of $4,608.91. The bank claims this money, as it also had claimed the machinery conveyed by the conditional sale contract, by virtue of an assignment made

to it by the Armstrong Machinery Company of its interest therein under the conditional sale contract. The extent of the interest so acquired by the bank, and whether or not the title to the machinery became perfected in the cold storage company and its receiver by the bank receiving the full amount due it under the conditional sale contract, are the questions here to be answered.

It is contended by counsel for the bank that it has succeeded to all the rights which the Armstrong Machinery Company had in the machinery before any of the purchase price of over $9,000 had been paid to it thereon, as well as to all the rights of that company existing at the time of the formal assignment made by it to the bank when there was a balance due upon the purchase price of the machinery to that company of only $964.76, which sum was then paid by the bank to the Armstrong Machinery Company, and which sum, with interest thereon, was thereafter voluntarily paid by the receiver to the bank upon order of the court granting him permission so to do. Counsel for the bank proceed in their contention upon the theory that it has become subrogated to all the rights the Armstrong Machinery Company ever had, by virtue of having advanced to the Cold Storage Company from time to time sums aggregating $9,000 to make payments on the machinery as they fell due under the conditional sale contract, all of which it is insisted was done in compliance with an agreement and understanding that the bank should be secured by the conditional sale contract to the same extent as the Armstrong Machinery Company was secured thereby. No such understanding is evidenced in writing, but it is sought to be proven by the testimony of the president and vice president of the bank. The president of the bank testified upon the hearing before the court as follows:

"Q. Just state to the court please the nature of the transactions that the bank had with the Armstrong Machinery Company and the Cold Storage Company? A. Mr. Min-

nick [the manager of the Cold Storage Company] came to us in the spring, I think it was, of 1910, saying that he was going to put up a cold storage plant, that he had made arrangements with the Armstrong Machinery Company for the plant to cost eighteen or twenty thousand dollars, or something in that neighborhood. That he had turned over to them, I think it was some notes that he had, which he claimed would pay for half of the plant at least, and asked us if we would advance the balance of the money to complete the plant, that he considered that the plant would amply secure us for the money that we put into it, and we agreed to it. Q. And under that agreement did you advance any money to the Armstrong Machinery Company? A. Yes, sir. Q. And what was the amount that the bank advanced to the Armstrong Machinery Company? A. Well, it was something over nine thousand dollars. Q. And has that amount ever been paid? A. No, sir. Q. Repaid to the bank? A. No, sir. Q. And what security was the bank to have for this money that was advanced? A. We would have the security on this plant; we were to have a chattel mortgage or bill of sale, or an assignment of the Armstrong Machinery Company's security. That plant was to secure us for our money. . . . Q. What was the manner of paying the Armstrong Machinery Company? Was the check given direct to the Armstrong Machinery Company, or the money given to the Cold Storage Company? A. I think the money was to be given to Mr. Minnick, and we telephoned down to the Armstrong Machinery Company and saw that they got the money. Q. The money probably then was subject to Minnick's check? A. Yes, sir. Q. And you tried to see that he gave the check to the Armstrong Machinery Company as you advanced the money? A. Yes, sir, it has to be done that way to be legal, Mr. Hibschman. Q. Well, that is for the court to determine. A. Well, I might say that the National Bank Examiner, when a man gives up a note, we have to credit that amount to his account. Q. Then you took Mr. Minnick's note each time, did you? A. Yes, sir. Q. For each amount as you advanced it? A. Practically. Q. Do you know whether that was Minnick's note or the note of the Cold Storage Company which you would take? A. Well, I think it was Mr. Minnick's; it might have been both, I would not say."

The testimony of the vice president of the bank is substantially the same, so far as here material, as that of the president above quoted. On December 19, 1910, the bank advanced the sum of $964.76, being the balance due the Armstrong Machinery Company on the conditional sale contract, and then received a formal written assignment of the rights of the Armstrong Machinery Company thereunder, which written assignment purported to convey to the bank "all interest that said Armstrong Machinery Company of Spokane, Washington, has or ever had in the property. . . ." It is not clear from the record before us whether this final balance due under the conditional sale contract was paid by the bank directly to the Armstrong Machinery Company or was paid by the bank to the Cold Storage Company, but it is, in any event, clear that the advancement of this money by the bank, payment thereof to the Armstrong Machinery Company, and the making of the assignment by the Armstrong Machinery Company to the bank constituted a single transaction. This assignment constitutes the only written evidence of the bank's succeeding to the rights of the Armstrong Machinery Company. The foregoing summary of the facts, is, we think, as favorable to the bank's contentions as the record admits of.

We are unable to concur in the view that the bank acquired any interest whatever in the machinery conveyed by the conditional sale contract until it received the assignment from the Armstrong Machinery Company of its title to the machinery. Until that time, the title to the machinery was in the Armstrong Machinery Company. That company did not have a mere lien upon the machinery securing the payment of the unpaid portion of the agreed purchase price, but it possessed absolute title thereto, subject to be defeated by the payment of whatever balance was due upon the agreed purchase price. As said by us in *Winton Motor Carriage Co. v. Broadway Automobile Co.*, 65 Wash. 650, 118 Pac. 817, 37 L. R. A. (N. S.) 71:

"The title, which is by this contract reserved in the seller, is the absolute title, under which he may retake the property, if at all, and retain it without any obligation whatever to account therefor, or for any surplus of the value thereof above the unpaid purchase price, to the purchaser. The thing which our law recognizes as being retained by the seller under this contract is not a mere lien or equity securing the balance of the purchase price, but the absolute title, which remains in him or passes from him to the purchaser absolutely, accordingly as the conditions of the sale are broken, or as they are fulfilled."

Of course the bank acquired the defeasible title to the Armstrong Machinery Company by the assignment, but it acquired by that assignment only the title of the Armstrong Machinery Company as that title then existed and was subject to be defeated by the payment of the balance of the agreed purchase price, which was then, as we have noticed, only $964.76, which sum with interest was thereafter paid in full to the bank by the receiver. This, it seems to us, as completely perfected the title of the receiver, the successor in interest of the Cold Storage Company, as if that payment had been made by the receiver directly to the Armstrong Machinery Company in the absence of an assignment to the bank. Nor do we think that the language of the assignment purporting to convey other than the Armstrong Machinery Company's present interest aids the bank in its claims here made. The bank may have had some understanding with the Cold Storage Company that security was to be given to it in the form of "a chattel mortgage or bill of sale, or an assignment of the Armstrong Machinery Company's security," but the fact is that no such security was given until the assignment was made by the Armstrong Machinery Company to the bank when only $964.76 was due it upon the conditional sale contract. The bank took the title to the machinery subject to having the title defeated by the payment to it of this sum, which was thereafter paid to it.

The claimed agreement existing between the bank and the Cold Storage Company, even though regarded as being acquiesced in by the Armstrong Machinery Company, is, it seems to us, too indefinite and uncertain to support the claims of the bank here made. It will be noticed from the testimony of the president of the bank, above quoted, that the sums advanced by the bank prior to the final payment when the assignment was made by the Armstrong Machinery Company to it, were advanced as loans by the bank to the Cold Storage Company or Minnick, its manager, or probably both, and that notes were actually executed therefor, manifestly with a view on the part of the bank officers, as expressed by the president in his above quoted testimony, to have it "done that way to be legal," no doubt having in mind that a national bank was required to make such advances as loans and not as a purchaser acquiring the right of a seller under a conditional sale contract. In other words, it manifestly was regarded as necessary to put the matter in this form rather than for the bank to become in effect a purchaser of personal property. It is indeed difficult to see upon what theory the bank's claim is here made to rest, other than that it, by this loose arrangement, became the owner of the legal title to this machinery at all times after the making of this claimed agreement and the bank's first advance thereunder, subject only to the title of the Armstrong Machinery Company. We have already noticed that this machinery never legally stood as *security for the payment of a debt*. The title thereto was in the Armstrong Machinery Company and the bank, its successor in interest, and after assignment by it to the bank, was subject to be defeated by the payment of the balance due on the purchase price agreed upon in the conditional sale contract, which was then only $964.76.

We conclude that the bank's defeasible title to the machinery passed absolutely to the receiver upon the payment to it of the balance due upon the purchase price specified in

the conditional sale contract, just as the title of the Armstrong Machinery Company would have so passed to the receiver had such payment been made to it. The rights of the bank here involved are no more than those of an unsecured creditor. It never had any lien of any nature upon the machinery. That it possessed a legal defeasible title at one time is of no consequence now, since that title has been defeated by full payment of the purchase price specified in the conditional sale contract upon which it rested.

The judgment is affirmed.

MORRIS, C. J., CHADWICK, MOUNT, and HOLCOMB, JJ., concur.