[No. 20776.   Department Two.   April 14, 1928.]

LAHN & SIMMONS, *Plaintiff*, v. MATZEN WOOLEN MILLS *et al., Defendants-Respondents,* AMERICAN INSURANCE AGENCY, *Petitioner-Appellant,* DEXTER HORTON NATIONAL BANK, *Intervener-Respondent.*[1]

[1] CHATTEL MORTGAGES (1)—SALES (168)—CONDITIONAL SALES DISTINGUISHED FROM CHATTEL MORTGAGE—CONSTRUCTION OF CONTRACT —CONDITIONS AND PROVISIONS.  In view of the difference between chattel mortgages and conditional bills of sale as regards the passing of title, and the election of remedies, and the fact that the intention of the parties must be gathered from all the language used in the contract, and that conditional sales are not favored in the law, an insurance company's agreement to install a sprinkler system in a woolen mill for which the mill gave its notes for the cost, including insurance for a term of years, constituted a chattel mortgage and not a conditional bill of sale, notwithstanding one provision to the effect that the title should remain in the insurance company until fully paid for, where it was provided that, in case of default, the company could enter, remove the sprinkler system and sell the same and apply the proceeds, less cost and a reasonable attorney's fee, as a credit on the notes, and construed as a whole, created the relation of debtor and creditor, in effect securing a loan whereby the mill company obtained material reduction in its rate of insurance.

Appeal from a judgment of the superior court for King county, Ronald, J., entered May 2, 1927, upon findings in favor of the intervener, in an action on contract.   Affirmed.

*Howe & Graham* and *James B. Howe, Jr.,* for appellant.

*McClure & McClure, Chadwick, McMicken, Ramsey & Rupp,* for defendants-respondents.

*Wright, Froude, Allen & Hilen, Bogle, Bogle & Gates,* and *Edward G. Dobrin,* for intervener-respondent.

[1]Reported in 266 Pac. 697.

MAIN, J.—After this action was instituted, receivers were appointed for the defendant, the Matzen Woolen Mills, a corporation. Thereafter, the American Insurance Agency presented a petition asking that certain of the property be turned over to it as owner. The Dexter Horton National Bank intervened and resisted the petition of the insurance agency. The trial resulted in findings of fact, conclusions of law and a judgment sustaining the position of the bank and holding that the insurance agency did not have title to the property in question. From the judgment thus entered, the insurance agency appeals.

The facts essential to be stated are these: The Matzen Woolen Mills, a corporation, owned and operated a manufacturing plant at Kirkland, in King county. July 1, 1926, it executed and delivered to the Dexter Horton National Bank, as trustee, a trust deed covering the property. This deed was duly recorded, both as a real estate and chattel mortgage. At the time of the trial, there was outstanding under the mortgage and trust deed bonds aggregating approximately $100,000.

Prior to the time the trust deed was executed, the woolen mills entered into an agreement with the insurance agency in substance as follows: Paragraphs 1, 2, 3 and 4 provided that the woolen mills should insure the plant for the sum of $400,000 for a period of four years. The premiums for this insurance were to be paid, $1,200 November 1, 1924, and $650 on the first of each and every month thereafter until the forty-eight additional payments had been made, making a total of $32,400. The woolen mills executed forty-eight notes for these deferred payments. Paragraph 5 provides that the insurance agency, at its own expense, shall install a complete automatic sprinkler equipment, including underground mains, pipes,

valves, tanks and towers and other incidental matters. Paragraph 6 provides that the installation of the sprinkler equipment shall be at the expense of the insurance agency, but that, if the woolen mills should make any change in its plant that will require additional sprinkler or other protection, that company shall pay the expenses of installation. Paragraph 7 provides that, if any changes be made in the plant by the woolen mills which should result in an increase in the insurance rate, that company shall pay the additional increase in rate. Paragraph 8 requires the woolen mills to keep the sprinkler equipment, including water supply and fire protection devices in good and approved working order during the life of the contract. Paragraph 9 specifies that the period when the insurance provided for in the contract shall start shall be when the sprinkler equipment is installed, connected with the water supply, the water turned on and the property under approved sprinkler protection. Paragraphs 10 and 11 of the contract are as follows:

"10. Title to and ownership of all fire protection devices installed shall be and remain in the first party until the full and faithful performance of this contract by the second party, at which time the first party shall execute a good and sufficient bill of sale thereto to the second party, and to the end of protecting title to and ownership of said devices in the first party, the second party hereby covenants that the same shall at all times be considered personal property and it will maintain such status against the claims of the world and in all cases the second party will protect and save harmless the first party against all purchasers, creditors, incumbrancers and lien holders or other person whomsoever.

"11. If the second party shall default in making the payments of any notes as in paragraph 2 provided, the first party is hereby authorized at any time thereafter to enter upon said premises, remove therefrom

all of the said fire protection devices and sell the same at public or private sale, without notice, and the proceeds of such sale, after paying all costs and expenses, including a reasonable attorney's fee, shall be applied as credit upon the liquidated damages remaining due as herein provided.''

Paragraph 12 makes time the essence of the agreement.

In pursuance of the terms of the contract, the insurance agency caused the Rockwood Sprinkler Company, the Federal Pipe & Tank Company and one A. S. Metcalfe to install in and upon the property of the woolen mills a complete automatic sprinkler system. The insurance rate, with the sprinkler system installed and in operation, was materially less than it had been prior to that time. In other words, with the sprinkler system installed the cost of insurance to the woolen mills was much less. For this system, the insurance agency paid $14,800 to the Rockwood Sprinkler Company and $4,200 to the Federal Pipe & Tank Company. The insurance premiums were estimated at $9,600, making a total cost to the agency of $28,600. The notes provided for were executed by the woolen mills and delivered to the agency. As above indicated, the woolen mills became insolvent, receivers were appointed, and the controversy arose between the insurance agency, claiming title to the entire sprinkler system, which it caused to be installed under its contract, which it asserted was a conditional sale contract, and the Dexter Horton National Bank, claiming as trustee under its trust deed for the benefit of bondholders.

The question to be determined is whether the agreement between the insurance agency and the woolen mills is to be construed as a conditional sale contract. If it is and title to the sprinkler system has been reserved to the insurance agency, the judgment of the

trial court cannot be sustained. On the other hand, if the agreement is not a conditional sale contract, then the insurance agency had no title to the sprinkler system, but only a lien thereon as against the woolen mills, because the contract was not executed as a chattel mortgage.

[1] Before considering the contract and its effect, it is well to restate certain well settled rules of law which are pertinent to the present inquiry. In a conditional sale contract, the absolute title to the property covered thereby remains in the vendor. In a chattel mortgage, the title to the property is in the mortgagor, and the mortgagee has only a lien thereon. *Winton Motor Carriage Co. v. Broadway Automobile Co.,* 65 Wash. 650, 118 Pac. 817, 37 L. R. A. (N. S.) 71; *Malmo v. Washington Rendering & Fertilizing Co.,* 79 Wash. 534, 140 Pac. 569, L. R. A. 1917C 440; *Duarte v. Minnick,* 85 Wash. 539, 148 Pac. 600.

The rights of the creditor under a chattel mortgage and a conditional sale contract are not the same. Under the latter, the vendor may disaffirm the contract and retake the property, or he may treat the transaction as an absolute sale and sue on the contract. He cannot do both, because the remedies are inconsistent. *Jones v. Reynolds,* 45 Wash. 371, 88 Pac. 577; *Stewart & Holmes Drug Co. v. Reed,* 74 Wash. 401, 133 Pac. 577; *Eilers Music House v. Douglas,* 90 Wash. 683, 156 Pac. 937, L. R. A. 1916E 613; *Kimble Motor Car Co. v. Androw,* 125 Wash. 225, 215 Pac. 340.

In determining whether the contract be one of conditional sale and thereby reserves title to the vendor or something else, the name which the parties may have given to the instrument is not controlling. The answer is to be found, not alone in any particular provision in the contract disconnected from the others, but in

the ruling intention of the parties gathered from all the language that they have used in the contract.  In *Heryford v. Davis,* 102 U. S. 235, it is said:

"What, then, is the true construction of the contract?  The answer to this question is not to be found in any name which the parties may have given to the instrument, and not alone in any particular provisions it contains, disconnected from all others, but in the ruling intention of the parties, gathered from all the language they have used.  It is the legal effect of the whole which is to be sought for.  The form of the instrument is of little account."

A contract of conditional sale contemplates the relation of vendor and vendee.  In *Eilers Music House v. Fairbanks,* 80 Wash. 379, 141 Pac. 885, it is said:

"The whole tenor of the instrument shows that the goods were to be consigned for sale upon commission, and that there was no conditional sale, because the contract does not create the relation of vendor and vendee."

In a contract of conditional sale the relation of debtor and creditor is not created.  In *Holt Manufacturing Co. v. Jaussaud,* 132 Wash. 667, 233 Pac. 35, it is said:

"We have consistently held that, under the statutes of this state, no title whatever passes under a conditional sales contract of personal property, and that the relation of debtor and creditor is not created."

Conditional sales contracts are not favored in the law and where, upon the face of the instrument, it is doubtful whether the contract is one of conditional sale or mortgage, the courts generally treat it as the latter.  In *West American Finance Co. v. Finstad,* 146 Wash. 315, 262 Pac. 636, it is said:

"Conditional sales are not favored in the law, and 'where it is doubtful, from the face of an instrument, whether the contract is a conditional sale or a mort-

gage, the courts generally treat it as a mortgage, for the reason that such construction will be most apt to attain the ends of justice and prevent fraud. and oppression.' ''

With the rules of law stated in mind, attention will now be given to the contract involved in this case. Its primary purpose evidently was to secure to the insurance agency the premiums resulting from the $400,000 insurance, with the resultant benefit to the woolen mills of a reduced rate by the installation of the sprinkler system. No place in the contract is the agency mentioned as the vendor or the woolen mills as the vendee of anything. In paragraph 10, as above set out, it is provided that title to and ownership of the entire sprinkler system "shall be and remain" in the insurance agency until the full and faithful performance of the contract by the woolen mills. This paragraph standing alone would indicate an intention to reserve title in the insurance agency. But, as above pointed out, the entire contract must be read for the purpose of determining what was the ruling intention of the parties. The fact that, by the agreement, title was to remain in the vendor until the notes were paid does not necessarily import that the transaction was a conditional sale. In *West American Finance Co. v. Finstad, supra,* it was said:

"The fact that, by one of the terms of the agreement, the title is to remain in the seller until the purchase price is paid, does not necessarily import that the transaction was a conditional sale."

Paragraph 11, above set out, provides that in case of default in the payment of the notes the insurance agency shall have the right to enter upon the premises, remove the sprinkler system and "sell the same at public or private sale, without notice, and the proceeds of such sale, after paying all costs and expenses, in-

cluding a reasonable attorney's fee, shall be applied as credit upon the liquidated damages remaining due as herein provided." The "liquidated damages" there mentioned undoubtedly refer to obligations created by the notes. This provision of the contract would indicate that, in the case the insurance agency elected to retake the property, the notes should not be cancelled and held of no effect, but that they should remain an obligation of the woolen mills and that the proceeds from the sale of the property should be applied upon that obligation. If the obligation remained upon the notes after the sprinkler system was removed and sold, then the relation of debtor and creditor was created, which would be inconsistent with rights under a conditional bill of sale. Obviously it was not the intention of the parties, when the whole contract is considered, that in the event that the sprinkler system should be removed the woolen mills should be relieved from its obligations upon the notes then not paid. Those notes included not only the outlay for the sprinkler system, but the premiums for the insurance covering a period of four years. Where a contract provides that, in the event of default and the retaking of the property by the vendor, the latter shall sell the same and apply the proceeds upon the obligation of the vendee this is strongly persuasive that the contract is one of absolute sale with a reserved lien or mortgage back. In *Van Allen v. Francis*, 123 Cal. 474, 56 Pac. 339, it is said:

"Again, in case of default the right of recaption is reserved to the seller, but there is no condition for the sale of the property and the payment of any surplus over to the purchaser, a condition which when found is always strongly persuasive that the contract is one of absolute sale with a reserved lien or mortgage back."

In *Christie v. Scott,* 77 Kan. 257, 94 Pac. 214, it is said:

"The contract in this case, however, goes further, and provides that the seller may take possession of the property, remove and sell the same, and apply the proceeds towards the payment of the note, less the expense of such removal and sale. This is a plain recognition of the obligation to pay the note after the taking of the property."

It is our opinion that the contract in question must be construed as creating the relation of debtor and creditor after default and retaking of the property and sale thereof, and, if this be true, the contract can-not be one of conditional sale. As above pointed out, the vendor has no right to retake the property and then pursue the obligation of the vendee, because these remedies are inconsistent. It is not the office of a con-ditional bill of sale to secure a money loan. Its pur-pose is to permit the owner of personal property to make a *bona fide* sale on credit with the reserve title in himself until the purchase price is fully paid. In *Lyon v. Nourse,* 104 Wash. 309, 176 Pac. 359, it is said:

"It is not the office of a conditional bill of sale to secure money loaned. Its purpose is only to permit the owner of personal property to make a *bona fide* sale on credit, reserving the title in himself until the purchase price is fully paid in the manner and under the condi-tions laid down in the statute."

In determining whether a contract is one of condi-tional sale, as said in *Chicago R. Equipment Co. v. Merchants' Bank,* 136 U. S. 268, "each case must de-pend upon its special circumstances." It would serve no useful purpose to review all of the cases cited by the respective parties in this case, some holding that the contracts there involved were conditional sales and others that they were not, because, as pointed out, each

case must depend upon its own special circumstances for the purpose of determining the ruling intention of the parties. A few of the cases will be referred to.

In *Heryford v. Davis,* 102 U. S. 235, it was held that the contract there involved was not one of conditional sale, while in the cases of *Harkness v. Russell,* 118 U. S. 633, and *Bailey v. Baker Ice Machine Co.,* 239 U. S. 268, it was held that the contracts involved were conditional sales. In the *Harkness* case, the instrument, which was in the form of a note, it is true, authorized, in the event of the retaking of the property, the vendor to sell the same and to apply on the note any balance due as damages and rental for the thing sold. The contract there involved is very different from the one now before us, and, as already pointed out, it is not one particular provision that shall determine the intention of the parties, but this is to be derived from the entire contract. In the case of *Jordan v. Peek,* 103 Wash. 94, 173 Pac. 726, it was held that the contract there involved was one of conditional sale. There was a term in that contract which authorized the vendors, in the event that they retook the property, to apply the proceeds from the sale thereof upon the purchase price and recover from the vendees the balance remaining due. In the opinion, no special consideration is given to this particular term of the contract. When the entire contract there under consideration is read, its provisions are materially different from those in the present case. The case of *Edison General Electric Co. v. Walter,* 10 Wash. 14, 38 Pac. 752, is distinguishable. There the contract provided, among other things, for the giving of a mortgage which the court construed as a method of payment. That case is not controlling upon the one now before us.

As above indicated, in our opinion the contract now

before us was not one of conditional sale, but one where title passed to the vendee with a reserved lien.

The judgment will be affirmed.

MACKINTOSH, C. J., MITCHELL, and ASKREN, JJ., concur.

FULLERTON, J., (concurring)—In my opinion the conclusion reached in this cause is right, but I cannot concur in all of the reasoning of the opinion. I therefore concur in the result.