182 P.3d 967 (2008)
Gary PARDEE, a single person, Petitioner,
v.
Willis JOLLY, a single person, Respondent.
No. 80066-9.
Supreme Court of Washington, En Banc.
Argued February 28, 2008.
Decided May 8, 2008.
*970 Garold Edwin Johnson, Mann Johnson Wooster & McLaughlin, Tacoma, for Petitioner.
David C. Hammermaster, Sumner, for Respondent.
FAIRHURST, J.
¶ 1 Petitioner Gary Pardee, the optionee, filed suit against respondent, Willis Jolly, the optionor, seeking specific performance of an option to purchase real property. The trial court found Pardee performed in accordance with the terms of the contract and ordered Jolly to sell the property to Pardee. Jolly appealed and the Court of Appeals reversed. Pardee petitioned this court for discretionary review, which we granted.
¶ 2 We affirm the Court of Appeals in part and reverse in part. We hold substantial evidence supports the trial court's finding that Pardee made the final option payment a couple of weeks after December 21, 2004, but the trial court's finding that this payment was at the same time Pardee notified Jolly of his intent to exercise the option is not supported by substantial evidence. Thus, we hold Pardee did not perform according to the terms of the option contract. We also hold Pardee may be entitled to an equitable grace period and remand the case to the trial court to determine whether such a grace period should be extended and whether specific performance should be ordered.

I. STATEMENT OF THE CASE
¶ 3 Pardee and Jolly entered into an option to purchase real estate on January 18, 2004. By the terms of the contract, Pardee was required to pay an initial $10,000 plus $500 per month for one year, for a total payment of $16,000. The $16,000 in option payments would be deemed a partial down payment on the $300,000 purchase price of the property.[1] The option could be exercised by Pardee in the following manner:
Once the purchaser has paid the full amount of option money, the option shall terminate unless the Purchaser notifies the Seller in writing at the time the Purchaser makes the last option payment that the Purchaser is exercising its option to purchase. If the Purchaser exercises the option, then the sale shall close pursuant to the terms of this Agreement. If the Purchaser does not exercise the option, then *971 this Agreement shall terminate. At any time during the term of the option, the Purchaser may pay the full amount of the option money due and must, at the same time, exercise its option to purchase the Property by giving written notice to the Seller at the address to which the monthly option payments are made. However, if the Purchaser does not exercise its option to purchase the Property prior to termination of the option term, this Agreement shall terminate without further notice to Purchaser, and the Purchaser shall lose all interest and rights in the property.
Ex. 1, ¶ 3.
¶ 4 The contract also provided Pardee with the right to occupy and improve the property during the option period but did not explicitly provide to whom the benefit of the improvements would inure if the option terminated.[2] The property in question included a dilapidated, vandalized house and a barn. After entering into the agreement, Pardee began making extensive repairs to the house, including installing new windows and doors, replacing the roof and siding, installing kitchen cabinets, procuring running water, adding fixtures to the kitchen and bathroom, replacing interior walls and floors, painting, and installing fireplaces and skylights. Pardee testified that the materials used in renovating the house cost $20,669.58. He also testified that he worked at least 2,500 hours in repairing the house. Pardee eventually moved into the house and appears to still be living there.
¶ 5 Pardee tendered one check for $10,000 and another for $1,000 when he signed the agreement on January 18, 2004. He continued to make timely payments by writing $1,000 checks every two months and tendered the final check on November 10, 2004. Pardee did not notify Jolly in writing that he intended to exercise the option in November.[3] Jolly then realized he needed to cash two of Pardee's earlier checks. When Jolly went to the bank to cash the $10,000 check from January, the bank dishonored it because it was stale. Jolly contacted Pardee, who voluntarily replaced the stale check with a new check for $10,000 on December 21, 2004. Jolly then tried to cash a $1,000 check from the previous spring, which was also dishonored by the bank because it was stale. "[A] couple of weeks" after December 21, 2004, Pardee wrote Jolly a new check to replace the $1,000 check.[4] Clerk's Papers (CP) at 103.
¶ 6 On January 14, 2005, Pardee sent a letter expressing his intent to exercise the option by certified mail. Jolly acknowledged receiving the letter on either January 15 or 16. After receiving the letter, Jolly told Pardee the option terminated the previous November and refused to sell the property. Pardee sued Jolly for specific performance of the contract or, in the alternative, reimbursement for the improvements he made to the property under the theory of quantum meruit. Jolly counterclaimed for a writ of restitution or ejectment and for reasonable rent for the time that Pardee occupied the premises.
¶ 7 The trial court determined Pardee was entitled to specific performance because the written notice was "contemporaneous with the re-issuance of the $1,000.00 check." CP at 104. The court also found the agreement contained no lease provisions and Jolly failed to provide adequate evidence as to the reasonable rental value of the residence. The court awarded Pardee attorney fees under the terms of the contract. Jolly moved for a new trial or reconsideration on the basis of newly discovered evidence.[5] The trial court *972 denied Jolly's motion because the evidence produced in support of the motion could have been discovered before trial. Jolly appealed.
¶ 8 The Court of Appeals reversed, holding Pardee's notice of his intent to exercise the option was not contemporaneous with his final payment on November 10, 2004. Pardee v. Jolly, noted at 136 Wash.App. 1055, 2007 WL 274787, slip op. at 4 (2007). The court noted that even if the reissued $1,000 check was the final payment, it was cashed sometime in December. On reconsideration, the Court of Appeals considered the evidence submitted by Jolly postverdict and stated that even if the last payment was on January 11, 2005, the payment and notification were not contemporaneous. The Court of Appeals did not address Pardee's equitable arguments. Pardee petitioned for discretionary review from this court, which we granted. Pardee v. Jolly, 162 Wash.2d 1011, 175 P.3d 1094 (2008).

II. ISSUES
(1) Whether the contract violates the statute of frauds and, if so, whether it is enforceable.
(2) Whether Pardee is entitled to specific performance under the terms of the contract.
(3) Whether Pardee is entitled to an equitable grace period and specific performance of the contract.

III. ANALYSIS
A. Standard of review
¶ 9 Findings of fact are reviewed under a substantial evidence standard, which requires that there be a sufficient quantum of evidence in the record to persuade a reasonable person that a finding of fact is true. Sunnyside Valley Irrigation Dist. v. Dickie, 149 Wash.2d 873, 879, 73 P.3d 369 (2003). If substantial evidence supports a finding of fact, an appellate court should not substitute its judgment for that of the trial court. Id. at 879-80, 73 P.3d 369. Questions of law are reviewed de novo. Id. at 880, 73 P.3d 369. The parties' intentions are questions of fact, while the legal consequences of such intentions are questions of law. Id.
B. The contract is enforceable under the part performance exception to the statute of frauds
¶ 10 Jolly argues the option agreement is unenforceable because it violates the statute of frauds. The statute of frauds, by its terms, applies to "[e]very conveyance of real estate, or any interest therein, and every contract creating or evidencing any encumbrance upon real estate." RCW 64.04.010. Under the statute of frauds, contracts for the sale or conveyance of real property must include a legal description of the property. Key Design Inc. v. Moser, 138 Wash.2d 875, 881, 983 P.2d 653, 993 P.2d 900 (1999). A contract for the sale or conveyance of platted real property must include a description of the property with the correct lot number, block number, addition, city, county, and state. Martin v. Seigel, 35 Wash.2d 223, 229, 212 P.2d 107 (1949). An option to purchase real estate is subject to the statute of frauds. 4 CAROLINE N. BROWN, CORBIN ON CONTRACTS § 17.19, at 490 (rev. ed.1997); Powers v. Hastings, 93 Wash.2d 709, 711 n. 1, 612 P.2d 371 (1980) (noting that a three year lease with an option to purchase real property falls within either the statute of frauds for contracts over one year or the real estate statute); Woolen v. Sloan, 94 Wash. 551, 553, 162 P. 985 (1917) ("[t]he option contract, being for real estate, of course was required by the statute of frauds to be in writing"); Broadway Hosp. & Sanitarium v. Decker, 47 Wash. 586, 589-90, 92 P. 445 (1907) (applying the statute of frauds to a lease with an option to purchase property).
¶ 11 Part performance removes a contract from the statute of frauds if a party is able to show: "(1) delivery and assumption of actual and exclusive possession; (2) payment or tender of consideration; and (3) the making of permanent, substantial and valuable improvements, referable to the contract." Powers, 93 Wash.2d at 717, 612 P.2d 371; Berg v. Ting, 125 Wash.2d 544, 555, 886 P.2d 564 (1995) (applying doctrine of part performance *973 to agreements containing inadequate legal descriptions). A strong case for the application of the part performance doctrine exists where all three factors are established. Berg, 125 Wash.2d at 557, 886 P.2d 564.
¶ 12 In this case, the contract contains an inadequate legal description of the property. The contract describes the property as "Parcel # 3 of Short Plat-8111120215 (7.37 Acres) Section 24 Twp 19N Range 5E. See attached For Full legal description." Ex. 1, ¶ 1. No legal description was attached to the option. The option does not identify the addition or city where the property is located and, consequently, violates the statute of frauds.
¶ 13 The option is enforceable despite the inadequate legal description because all three elements of the part performance doctrine are present. First, Pardee maintained actual and exclusive possession of the property beginning January 18, 2004. Second, Pardee paid $16,000 for the option. Third, the contract provides Pardee with the right to improve the property and testimony established that Pardee made permanent, substantial, valuable improvements to the house. The option contract is enforceable.
C. Pardee failed to perform under the terms of the contract
¶ 14 An optionee may exercise an option by complying with the terms of acceptance set forth in the option agreement. Whitworth v. Enitai Lumber Co., 36 Wash.2d 767, 770, 220 P.2d 328 (1950). If the optionee unconditionally exercises the option in accordance with the terms of the contract, the optionor must sell the property in accordance with the terms of the option. Id. If the optionee fails to exercise the option within the time specified or in the manner provided, all rights under the contract, along with any consideration given, are forfeited. Id. If the optionee exercises the option under the terms of the contract and the optionor refuses to sell the property, the optionee may be entitled to specific performance of the contract. 3 ERIC MILLS HOLMES, CORBIN ON CONTRACTS § 11.13, at 570 (rev. ed. 1996). The terms of an option contract are to be strictly construed and, generally, time is of the essence. Andersen v. Brennen, 181 Wash. 278, 280-81, 43 P.2d 19 (1935).
¶ 15 "When a court's legal powers cannot adequately compensate a party's loss with money damages, then a court may use its broad equitable powers to compel a party to specifically perform its promise." Crafts v. Pitts, 161 Wash.2d 16, 23-24, 162 P.3d 382 (2007). Specific performance is frequently the only adequate remedy for a breach of a contract regarding real property because land is unique and difficult to value.[6]Id. at 26, 162 P.3d 382. Specific performance is a proper remedy only if a valid contract exists, a party has or is threatening to breach the contract, the terms of the contract are clear, and the contract is not the product of fraud or unfairness. Id. at 24, 162 P.3d 382.
¶ 16 Whether Pardee is entitled to specific performance of the option depends on whether Jolly breached the contract which, in turn, depends on whether Pardee properly exercised the option under the contract terms. The date of Pardee's final payment and whether notice was given at the same time as the final payment are both questions of fact. Whether Pardee fulfilled the terms of the contract and is entitled to specific performance is a question of law. The first subsection addresses the finding of fact regarding the date of the final payment, and the second subsection addresses the finding of fact as to whether notice was given at the same time as the final payment, as well as the conclusion of law as to whether Pardee performed according to the contract terms.
1. The Court of Appeals erred in reversing the trial court's finding of fact regarding the date on which the final payment was made
¶ 17 Findings of fact are reviewed under a substantial evidence standard which requires *974 that there be a sufficient quantum of evidence in the record to persuade a reasonable person that a finding of fact is true. Sunnyside Valley Irrigation Dist., 149 Wash.2d at 879, 73 P.3d 369. If substantial evidence supports a finding of fact, an appellate court should not substitute its judgment for that of the trial court. Id. at 879-80, 73 P.3d 369.
¶ 18 The trial court found the $1,000 check was reissued to Jolly "a couple of weeks" after December 21, 2004. CP at 103. The Court of Appeals reversed, stating Pardee made the final option payment on November 10, 2004. The Court of Appeals subsequently amended its opinion, determining that the last check was cashed on January 11, 2005 based on evidence presented to the trial court postverdict in a motion for a new trial. The time of the final payment is a question of fact, and our review is whether the trial court's finding was supported by substantial evidence.
¶ 19 Pardee argues the trial court's finding that the final payment was made a couple of weeks after December 21 was supported by substantial evidence and the Court of Appeals erred by substituting its own judgment for that of the trial court. Pardee also argues that the final option payment occurred in January 2005 because the issuance of a check merely suspends an underlying obligation. Jolly argues the final payment was made in November because Pardee's obligation was discharged when he tendered the checks, not when he reissued the checks.
¶ 20 The trial court's finding that the last payment was made a couple of weeks after December 21, 2004 is supported by substantial evidence. The issuance of an uncertified check suspends the underlying obligation until the check is paid or certified.[7] RCW 62A.3-310(b)(1). If a check is dishonored and the person entitled to enforce the check is the obligee of the obligation for which the check was taken, the obligee may enforce either the instrument or the obligation. RCW 62A.3-310(b)(3). Both parties testified that on December 21, 2004, Pardee assisted Jolly by reissuing the $10,000 check. Pardee testified that a few weeks after the holidays he met with Jolly again and reissued the $1,000 check. Jolly agreed that a second meeting took place after the holidays. Based on this testimony, the trial court found that "[a]lthough Mr. Jolly's testimony was vague in terms of the exact date, at most his testimony was a couple of weeks after the [$] 10,000.00 check was reissued he requested Mr. Pardee assist him with cashing a $1,000.00 [check] he had received and failed to negotiate in a timely manner." CP at 103. Substantial evidence exists to support the trial court's finding that the final payment was a couple of weeks after December 21 and the Court of Appeals erred in substituting its own judgment for that of the trial court.[8]
2. The Court of Appeals did not err in reversing the trial court's finding that Pardee notified Jolly of his intent to exercise the option contract at the same time as the final payment and, in turn, properly reversed the trial court's conclusion that Pardee exercised the option in accordance with the terms of the option contract
¶ 21 The option contract clearly provides that the optionee could pay the remaining balance at any time and "must, at the same time, exercise its option to purchase *975 the Property by giving written notice to the Seller at the address to which the monthly option payments are made."[9] Ex. 1, ¶ 3. Both the trial court and Court of Appeals reasoned "at the same time" meant contemporaneous. Pardee, slip op. at 4. The trial court found, "[t]he written notice was sent to Mr. Jolly contemporaneous with the re-issuance of the $1,000.00 check." CP at 103-04. This finding was based on testimony that the $1,000 check was reissued a couple of weeks after December 21, 2004 and the notice was sent by certified mail on January 14, 2005.[10] The Court of Appeals reversed, reasoning that the written notice postmarked January 14, 2005 was not contemporaneous with cashing the check on January 11, 2005.[11]
¶ 22 Pardee failed to strictly comply with the terms of the option. Pardee's final payment was made "a couple of weeks" after December 21, 2004. CP at 103. A couple of weeks after December 21, 2004 was approximately January 4, 2005. Notice was received around January 15, 2005. Option contracts are to be strictly construed and time is of the essence. Andersen, 181 Wash. at 280, 43 P.2d 19. Strictly construing the contract, it is clear that Pardee failed to provide notice of his intent to exercise the option when he made the final payment because more than a week elapsed between the two events. The trial court's finding that notice was given contemporaneous with the final payment was not supported by substantial evidence, and the Court of Appeals, although improperly modifying the finding of fact regarding the date of the final payment, did not err in holding Pardee did not provide written notice at the same time as the final payment. As such, the Court of Appeals correctly determined Pardee failed to properly exercise his option to purchase the real estate in question.
D. Pardee may be entitled to an equitable grace period and specific performance of the contract
¶ 23 Pardee argues the Court of Appeals erred in refusing to address his argument regarding whether he is entitled to an equitable grace period. This section begins with a discussion of whether the termination provision in this option contract may be treated like a forfeiture. The second section addresses the law regarding equitable grace periods.
1. The termination of the option to purchase in this case is analogous to a forfeiture because the optionee was allowed to occupy the property and make substantial improvements thereon
¶ 24 A contract's title is not determinative of its legal effect. Lahn & Simons v. Matzen Woolen Mills, 147 Wash. 560, 564, 266 P. 697 (1928). In classifying a contract, the intent of the parties, as expressed in the language of the entire contract rather than a particular provision, is determinative. Id. at 564-65, 266 P. 697. The parties in this case argue the contract in question should be classified as a pure option contract, a real estate contract, or a lease with an option to purchase.
¶ 25 In a pure option contract, "[t]he optionor parts only with the right to sell the property to any other person during the time limited, and the optionee acquires only the right to purchase the property in *976 futuro, upon the terms and conditions prescribed by the option contract." Hopkins v. Barlin, 31 Wash.2d 260, 266, 196 P.2d 347 (1948). A pure option contract does not include the right to possess and improve the land during the option period. A "real estate contract" is "any written agreement for the sale of real property in which legal title to the property is retained by the seller as security for payment of the purchase price." RCW 61.30.010(1). A lease with an option to purchase involves a lease for a certain period of time and an option for the lessee to purchase the property from the lessor. See Powers, 93 Wash.2d at 710-11, 612 P.2d 371.
¶ 26 The contract in question is not a real estate contract because it does not provide for the actual sale of real property.[12] While the boilerplate form used by the parties proclaims the contract to be an option to purchase real estate, a handwritten provision provides Pardee with the right to occupy and improve the property during the option period. Because of this provision, the contract is a hybrid of a lease with an option to purchase and a pure option contract. Because of the unique facts and contractual provisions in this case, the equitable principles regarding forfeitures apply.
2. On remand, the trial court should determine whether Pardee is entitled to an equitable grace period
¶ 27 "`[F]orfeitures are not favored in law and are never enforced in equity unless the right thereto is so clear as to permit no denial.'" Hyrkas v. Knight, 64 Wash.2d 733, 734, 393 P.2d 943 (1964) (quoting State ex rel. Foley v. Superior Court, 57 Wash.2d 571, 574, 358 P.2d 550 (1961)). "In order to avoid the harshness of forfeitures and the hardship that often results from strict enforcement thereof, the courts have frequently granted a `period of grace' to a purchaser before a forfeiture will be decreed." Moeller v. Good Hope Farms, Inc., 35 Wash.2d 777, 783, 215 P.2d 425 (1950); see also Dill v. Zielke, 26 Wash.2d 246, 252-53, 173 P.2d 977 (1946). Whether a grace period is warranted depends on the equities in each particular case. Moeller, 35 Wash.2d at 783, 215 P.2d 425.
¶ 28 In Wharf Restaurant, Inc. v. Port of Seattle, 24 Wash.App. 601, 603, 605 P.2d 334 (1979), a long term lessee of real property failed to timely exercise an option to renew its lease, although it had made substantial improvements to the property and intended to renew. The Court of Appeals determined, based on the equities of the case, a grace period should be extended to the lessee and, as such, the lessee was entitled to specific performance of the option to renew. Id. at 612, 605 P.2d 334. The court noted it was necessary to balance equity's abhorrence of forfeitures with excusing a party from negligently failing to exercise an option and determined equitable relief was appropriate in limited circumstances. Id. at 610, 605 P.2d 334. In determining whether relief was appropriate, the court considered the following factors: (1) whether the lessee's failure to give timely notice was inadvertent rather than intentional, culpable, or grossly negligent; (2) whether the lessee made valuable permanent improvements; (3) whether the lessor was prejudiced by the untimely notice; (4) the length of the lease; and (5) whether the lessor contributed to the delay. Id. at 612-13, 605 P.2d 334.
¶ 29 In a subsequent case, the Court of Appeals followed the reasoning in Wharf Restaurant, noting that whether an equitable grace period is appropriate depends on the facts and circumstances of a case and is largely within a trial court's discretion. Heckman Motors, Inc. v. Gunn, 73 Wash. App. 84, 88, 867 P.2d 683 (1994). In Heckman Motors, the court held an equitable grace period did not apply because the lessee had not made substantial valuable improvements on the property, there was a substantial delay in exercising the notice to renew the lease, and the lessor had not done "anything to induce or contribute to the delay." Id. at 88-89, 867 P.2d 683.
¶ 30 The trial court in this case did not address whether an equitable grace period *977 applied because it determined Pardee complied with the terms of the contract. However, it noted Jolly was trying to "have his cake and eat it too" by allowing Pardee to transform the house from "a burnt out hulk" into a livable residence and procuring his assistance in reissuing the checks, all the while believing that the option had already terminated. Verbatim Report of Proceedings at 174. The Court of Appeals, although the equitable issue was properly raised, declined to address this argument.
¶ 31 Pardee argues that the Court of Appeals erred in failing to consider this issue and equity demands that he be granted a grace period. Jolly argues Wharf Restaurant does not apply because Pardee did not forfeit ownership in an asset; instead, the option merely terminated. As we noted earlier, the law regarding equitable forfeitures applies in this case because of the unique provisions of the option. Furthermore, contrary to Jolly's assertions, this case involves a substantial forfeiture. If the option is deemed terminated, Pardee not only loses $16,000, which would be an acceptable result for the termination of an option, he also loses the $20,669.58 he invested in repairing the house and the 2,500 hours that he spent working on the house so that he could use it as collateral for a mortgage. This is a significant forfeiture that should be analyzed using the equitable principles set forth in Wharf Restaurant and Heckman Motors.
¶ 32 Because the record contains insufficient findings of fact related to whether equity demands that a grace period be extended to Pardee, we remand this case to the trial court. The trial court should consider whether Pardee is entitled to an equitable grace period using the Wharf Restaurant considerations. In addition, the trial court should consider whether Pardee is entitled to attorney fees under the terms of the contract.

IV. CONCLUSION
¶ 33 We affirm the Court of Appeals in part and reverse in part. We reverse the Court of Appeals and hold the trial court's finding regarding the date of the final payment is supported by substantial evidence. We affirm the Court of Appeals holding that Pardee failed to exercise his option in accordance with the terms of the contract. We hold Pardee may be entitled to an equitable grace period and remand the case to the trial court to determine whether such a grace period should be extended and whether specific performance should be ordered.
WE CONCUR: GERRY L. ALEXANDER, C.J., and SUSAN OWENS, CHARLES W. JOHNSON, BARBARA A. MADSEN, JAMES M. JOHNSON, DEBRA L. STEPHENS, TOM CHAMBERS, JJ.
SANDERS, J. (concurring).
¶ 34 I concur in the majority's result, however, write separately to state my concern that the real estate statute of frauds, RCW 64.04.020 ("Every deed shall be in writing, signed by the party bound thereby, and acknowledged by the party before some person authorized by [ ] this act to take acknowledgments of deeds.") should not apply to this option agreement, as the option is obviously not a deed. Notwithstanding, the majority appears to follow the holding in Martin v. Seigel, 35 Wash.2d 223, 212 P.2d 107, 23 A.L.R.2d 1 (1949), which distorts and stretches the statute of frauds to cover real estate transactions other than deeds. For the reasons set forth in my concurring opinion in Key Design, Inc. v. Moser, 138 Wash.2d 875, 889-92, 983 P.2d 653, 993 P.2d 900 (1999) (Sanders, J., concurring), I would overrule Martin and repair to the plain text of the statute in question.
¶ 35 Therefore I concur in result.
I CONCUR: JAMES M. JOHNSON, J.
NOTES
[1] According to the contract, the purchase price was payable as a real estate contract; both parties admit this provision was a mutual mistake. The parties intended the purchase price to be paid in cash at the time of closing.
[2] The contract does not explicitly provide to whom the benefit of the improvements would inure if the option terminated, but it does specify that upon termination "the Purchaser shall lose all interest and rights in the property." Ex. 1, ¶ 3.
[3] If Pardee had made monthly payments for the full contract period, his last payment would have been due on January 10. Because he paid in advance, November 10 was the date of the final payment but, arguably, Pardee's underlying obligation was not discharged at that time because Jolly failed to timely cash two checks.
[4] Pardee paid the total amount due under the option contract.
[5] In support of this motion, Jolly declared he remembered after the trial that the final check was actually a money order and, as such, he would not have needed Pardee to reissue a check. He also declared that after the trial he was able to find a copy of a money order issued in March 2004 and cashed on January 11, 2005.
[6] Jolly argues the court is precluded from ordering specific performance because there is an adequate remedy at law. Jolly simply ignores the well established body of law regarding the propriety of specific performance as a remedy for the breach of a contract involving the sale or conveyance of real property. See Crafts, 161 Wash.2d at 23-26, 162 P.3d 382.
[7] The trial court found that both the $10,000 and $1,000 were checks. Postverdict, Jolly presented evidence that the payments were money orders, not checks. An instrument described as a money order is a "check" if it is a draft payable on demand and drawn on a bank. RCW 62A.3-104(f). Whether the payments were in the form of checks or money orders is irrelevant to our analysis.
[8] In reversing the trial court, the Court of Appeals considered evidence presented postverdict as part of Jolly's motion for new trial or reconsideration. This evidence was properly before the Court of Appeals because Jolly appealed the trial court's denial of his motion for reconsideration. If the Court of Appeals believed the trial court abused its discretion in denying Jolly's motion for a new trial, it should have remanded the case for a new trial. See Stibbs v. Stibbs, 37 Wash.2d 377, 379, 223 P.2d 841 (1950); Kurtz v. Fels, 63 Wash.2d 871, 878, 389 P.2d 659 (1964). The Court of Appeals could not, however, examine the evidence produced postverdict substantively in determining whether there was substantial evidence to support the trial court's findings of fact.
[9] Arguably, the court could rule that because the final payment was not made until January, the payments were not made in advance and thus under the contract, notice was required "at the time" of the last option payment. See Ex. 1, ¶ 3. The difference in language between "at the time" and "at the same time" is of no consequence in this case, and we choose to follow the analysis adopted by the parties and lower courts.
[10] The general rule that notice of acceptance by post is effective as of the date of mailing generally does not apply to a notice of acceptance pursuant to a binding option contract. 3 Holmes, supra, § 11.8, at 525-26. Instead, in the absence of contract terms to the contrary, notice of the intent to exercise an option is effective upon receipt. Id. at 526. The contract in this case does not specify when notice would be effective, so assuming it was effective upon receipt, the notice was effective January 15, 2005. See CP at 103 (finding the notice was received on either January 15 or 16).
[11] As noted above, the Court of Appeals erred in substituting its judgment for that of the trial court in determining the final payment was made January 11, 2005. See supra note 8.
[12] The contract indicated that the purchase price was payable as a real estate contract. Both parties agree this was a mutual mistake.