**FILE**

IN CLERK'S OFFICE
SUPREME COURT, STATE OF WASHINGTON
SEPTEMBER 10, 2020

CHIEF JUSTICE

THIS OPINION WAS FILED
FOR RECORD AT 8 A.M. ON
SEPTEMBER 10, 2020

SUSAN L. CARLSON
SUPREME COURT CLERK

# IN THE SUPREME COURT OF THE STATE OF WASHINGTON

| | | |
|---|---|---|
| BORTON & SONS, INC., | ) | |
| | ) | No. 97690-2 |
| Respondent, | ) | |
| | ) | |
| v. | ) | EN BANC |
| | ) | |
| BURBANK PROPERTIES, LLC, | ) | |
| | ) | Filed: <u>September 10, 2020</u> |
| Petitioner. | ) | |
| | ) | |

YU, J. — This case concerns the granting of an equitable grace period to exercise an option to purchase contained in a lease agreement and whether valuable permanent improvements to the property are a necessary prerequisite. We hold that granting an equitable grace period is proper only when a lessee makes valuable improvements to property that would result in an inequitable forfeiture if the lessee is not given a grace period.

When a lessee does not timely exercise an option contained in a lease agreement, special circumstances may warrant granting them extra time to exercise the option. However, in this case, petitioner Burbank Properties LLC mailed its

notice shortly after the deadline had passed, and the trial court awarded Burbank an equitable grace period to exercise the option on summary judgment where it was undisputed that no valuable permanent improvements were made. As explained below, Burbank could not be granted an equitable grace period as a matter of law.

FACTUAL AND PROCEDURAL BACKGROUND

In 2012, Burbank purchased 164 acres of agricultural land. Burbank's owner, Eric Rogers, farmed early season potatoes on the property, which required rotating the potato crop with grass seed or timothy hay every two to three years. When Rogers began to have financial troubles, his real estate broker devised a plan to sell the property below market rate and enter into a leaseback agreement containing an option to repurchase the land at the end of the lease.

In February 2016, Borton & Sons Inc. purchased the land for $1,550,000, subject to a three-year "Lease and Option Agreement" (Agreement). Per the Agreement, Burbank was required to exercise the purchase option by December 31, 2017 via registered or certified mail, and closing was to occur no later than December 31, 2018. The Agreement also contained a "time is of the essence" clause. During the lease period, Rogers continued to harvest potatoes and planted timothy hay, which is a two to three year crop.

Three days before the option was set to expire, Rogers drafted a "Notice of Exercise of Option to Purchase the Subject Property" (Notice). Rogers

inadvertently failed to meet the December 31 deadline and mailed the Notice via regular mail on January 4, 2018. After receiving the Notice on January 8, 2018, Borton notified Burbank that it had failed to timely exercise the option and requested an acknowledgment that the option was terminated. In response, Burbank contended that the Notice was valid and enforceable and affirmed its intent to close the sale on December 31, 2018.

Shortly thereafter, Borton initiated a declaratory judgment action, and Burbank counterclaimed. Following argument on the parties' cross motions for summary judgment, the trial court ruled that Burbank was entitled to an equitable grace period "based on the potential timothy hay loss and the loss in equity [of the property]." Verbatim Report of Proceedings (May 29, 2018) at 16. Borton unsuccessfully moved for reconsideration of the oral ruling.

In its order granting Burbank's summary judgment motion and denying Borton's, the trial court decreed that Burbank properly exercised the option, that Burbank was entitled to an equitable grace period to exercise the option, and that Burbank was entitled to purchase the property from Borton in accordance with the terms of the Agreement. In addition, the court awarded Burbank reasonable attorney fees and costs.

Borton appealed, and Division Three of the Court of Appeals reversed the trial court in a published, split opinion. *Borton & Sons, Inc. v. Burbank Props.,*

*LLC*, 9 Wn. App. 2d 599, 444 P.3d 1201 (2019). On the issue of the standard of review, the lead opinion held that a de novo review of the summary judgment order was correct, while the concurring opinion held that an abuse of discretion standard was proper. *Id*. at 605, 613. The dissenting opinion opted to avoid the issue. *Id*. at 617.

On the merits, the court held that an equitable grace period is available only when substantial improvements are made to the property such that the lessee would suffer an inequitable forfeiture if a grace period were not granted, and since Burbank made no such improvements, Burbank failed to demonstrate that it would suffer an inequitable forfeiture. *Id*. at 611. The court thus concluded that as a matter of law, Burbank was not entitled to an equitable grace period.

Burbank filed a petition for review, which we granted. *Borton & Sons*, *Inc. v. Burbank Props., LLC*, 194 Wn.2d 1016 (2020).

## ISSUES

A.      What is the standard of review when reviewing whether an equitable grace period was properly granted on summary judgment?

B.      Are valuable permanent improvements to property required before a trial court may grant an equitable grace period to exercise an option contained in a lease?

4

C.      Did the trial court have discretion to grant Burbank an equitable grace

period?

D.      Is Burbank entitled to attorney fees and costs?

ANALYSIS

A.      When reviewing whether a trial court properly granted an equitable grace
period on summary judgment, the proper standard of review is de novo

In this case, we are asked to decide whether an equitable grace period was

properly granted on summary judgment. The Court of Appeals' lead opinion

reviewed the trial court's grant of the equitable grace period de novo, citing the

standards of review for declaratory judgment actions and motions for summary

judgment. *Borton*, 9 Wn. App. 2d at 605. Meanwhile, the concurrence applied an

abuse of discretion standard based on the principle that "the granting of equitable

remedies is the province of trial courts, not appellate courts." *Id*. at 613

(Lawrence-Berrey, C.J., concurring in part) (citing *Keck v. Collins*, 184 Wn.2d

358, 368, 357 P.3d 1080 (2015)). This closely aligns with Burbank's contention

that the abuse of discretion standard of review is proper "because the trial court has

broad discretionary authority to fashion equitable remedies." Pet. for Review at 8.

We hold that the lead opinion is correct and that the standard of review is de novo

because the question presented is not how the trial court fashioned the equitable

remedy, but whether the court had discretion to grant the lessee equitable relief as a

matter of law.

As a general rule, we review summary judgment orders de novo and engage in the same analysis as the trial court. *Keck*, 184 Wn.2d at 370; *Cristomo Vargas v. Inland Wash., LLC*, 194 Wn.2d 720, 728, 452 P.3d 1205 (2019). Summary judgment is appropriate only when "there is no genuine issue as to any material fact and [] the moving party is entitled to a judgment as a matter of law." CR 56(c). Likewise, we review orders, judgments, and decrees pursuant to the Uniform Declaratory Judgments Act de novo. RCW 7.24.070; *To-Ro Trade Shows v. Collins*, 144 Wn.2d 403, 410, 27 P.3d 1149 (2001).

In contrast, we review the *fashioning* of equitable remedies for an abuse of discretion because trial courts have "broad discretionary power to fashion equitable remedies." *In re Foreclosure of Liens*, 123 Wn.2d 197, 204, 867 P.2d 605 (1994). Thus, the standard of review depends on the question presented, because "[w]hile the fashioning of the remedy may be reviewed for abuse of discretion, the question of whether equitable relief is appropriate is a question of law." *Niemann v. Vaughn Cmty. Church*, 154 Wn.2d 365, 374, 113 P.3d 463 (2005).

Our decisions in *Pardee v. Jolly* and *Crafts v. Pitts* illustrate these principles. 163 Wn.2d 558, 182 P.3d 967 (2008); 161 Wn.2d 16, 162 P.3d 382 (2007). In *Pardee*, the trial court granted specific performance of an option contract to purchase property. We reviewed the award de novo on the basis that "[s]pecific performance is a proper remedy only if a valid contract exists, a party has

6

threatened or is threatening to breach the contract, the terms of the contract are clear, and the contract is not the product of fraud or unfairness." *Id*. at 569. We continued,

> Whether Pardee is entitled to specific performance of the option depends on whether Jolly breached the contract which, in turn, depends on whether Pardee properly exercised the option under the contract terms. . . . Whether Pardee fulfilled the terms of the contract and is entitled to specific performance is a question of law.

*Id*. Thus, we reviewed the equitable remedy de novo because our inquiry was whether equitable relief was appropriate as a matter of law and not whether the trial court properly exercised its discretion in fashioning the remedy.

By contrast, in *Crafts*, we applied the abuse of discretion standard when reviewing a trial court's summary judgment order to quitclaim an interest in land. 161 Wn.2d at 30. Burbank contends that *Crafts* supports its position but overlooks the fact that we reviewed the equitable remedy for abuse of discretion only after establishing that the party had a *legal* right to specific performance and that "[t]he trial court was well within its power to grant the Craftses' request for specific performance." *Id*. at 25.

Burbank also asserts that *Recreational Equipment, Inc. v. World Wrapps Northwest, Inc.* supports applying an abuse of discretion standard. However, this case does not support Burbank's position. 165 Wn. App. 553, 266 P.3d 924 (2011). There, the court stated that "[b]ecause the trial court has broad

discretionary authority to *fashion* equitable remedies, such remedies are reviewed for an abuse of discretion." *Id*. at 559 (emphasis added). Although the court articulated the correct principle, it incorrectly analyzed the threshold question of whether an equitable remedy was available using an abuse of discretion standard. *Id*. at 556. As discussed above, the fashioning of an equitable remedy is a distinct question from whether an equitable remedy is available as a matter of law and to the extent that *Recreational Equipment* suggests otherwise, we disapprove its application of an abuse of discretion standard.

In sum, the question of whether equitable relief is appropriate is a question of law that we review de novo. In this case, we are asked to review whether the trial court properly determined that Burbank was entitled to an equitable grace period as a matter of law and not whether the trial court properly fashioned the equitable remedy. Because the threshold inquiry is whether an equitable grace period was an appropriate remedy in the first place, our review is de novo.

B.      An equitable grace period to exercise an option contained in a lease is appropriate only when a lessee has made valuable improvements to the property

In general, when a lessee fails to exercise an option "within the time specified or in the manner provided, all rights under the contract, along with any consideration given, are forfeited." *Pardee*, 163 Wn.2d at 568. In addition, "[t]he terms of an option contract are to be strictly construed and, generally, time is of the

8

essence." *Id*. However, special circumstances may justify the grant of an equitable grace period when a lessee fails to timely exercise an option to renew or buy contained in a lease. *Wharf Rest., Inc. v. Port of Seattle*, 24 Wn. App. 601, 610-11, 605 P.2d 334 (1979); *see also Pardee*, 163 Wn.2d 558 (adopting the *Wharf* framework to determine whether a lessee may be granted an equitable grace period).

*Wharf* was the first Washington case to articulate standards for when an equitable grace period is appropriate when a lessee fails to timely exercise an option contained in a lease. There, a lessee forgot to exercise an option to extend a five-year lease and provided notice a month and a half after the option expired. *Wharf*, 24 Wn. App. at 603-04. The trial court granted specific performance of the option because the lessee had made valuable improvements to the premises with the intention of extending the lease. *Id*. at 612, 604.

While the *Wharf* court noted the "general reluctance of courts to relieve a party from its own negligent failure to timely exercise an option," it also acknowledged "equity's abhorrence of a forfeiture." *Id*. at 610. Accordingly, the court concluded that equitable relief is appropriate in "very limited" circumstances and cited Professor Corbin's treatise to explain these limitations:

> "[T]he power of the holder of an option to buy or renew, contained in a lease, is not necessarily terminated by failure to give notice within the specified time. If, in expectation of exercising the power, the lessee has made valuable improvements, and the delay is short without any change of position by the

lessor, the lessee will be given specific performance of the contract to sell or to renew. This is for the purpose of avoiding an inequitable forfeiture."

*Id*. at 611 (quoting 1 ARTHUR LINTON CORBIN, CORBIN ON CONTRACTS § 35 at 146-47 (1963)).

*Wharf* then outlined a five-factor test to determine whether a lessee is entitled to an equitable grace period to exercise a lease option: (1) the failure to give notice was inadvertent, (2) an inequitable forfeiture would have resulted had equity not intervened, (3) the lessor did not change its position and did not suffer prejudice, (4) the lease was for a long term, not a short term, and (5) there was no undue delay in exercising the option. *Id*. at 612-14. This court has since adopted and applied the *Wharf* factors, and the Court of Appeals has regularly applied them. *Pardee*, 163 Wn.2d at 574-77; *Recreational Equip.*, 165 Wn. App. 553; *Cornish Coll. of Arts v. 1000 Va. Ltd. P'ship,* 158 Wn. App. 203, 242 P.3d 1 (2010); *Heckman Motors, Inc. v. Gunn*, 73 Wn. App. 84, 867 P.2d 683 (1994); *Lenci v. Owner*, 30 Wn. App. 800, 638 P.2d 598 (1981).

In this case, the parties dispute the meaning of the second *Wharf* factor— whether an inequitable forfeiture would have resulted without an equitable remedy. Burbank contends that the Court of Appeals erred in holding that valuable permanent improvements to property are required before granting an equitable grace period. However, Washington cases have generally interpreted the inequitable forfeiture prong as requiring valuable permanent improvements to land,

10

and our only decision analyzing the *Wharf* factors indicates that valuable permanent improvements are necessary. We therefore hold that a lessee must make valuable improvements to the property prior to the granting of an equitable grace period.

      1.     The second *Wharf* factor requires valuable permanent improvements to the subject property

In this case, the Court of Appeals held that equitable relief is proper only when the lessee has made valuable permanent improvements to the subject property. *Borton*, 9 Wn. App. 2d at 608. On appeal, Burbank asserts that the court's decision "is now in conflict with decisions of the other divisions of the Courts of Appeal as well as the Washington State Supreme Court." Pet. for Review at 11. To the contrary, requiring valuable improvements is consistent with every published case in Washington concerning equitable grace periods.

Burbank contends that the Court of Appeals errantly "stated that a permanent improvement is essentially the sixth *Wharf* element" and cites our decision in *Pardee* to prove that such improvements are not "an additional factor in the analysis." *Id.* at 17, 13. Burbank is correct that valuable permanent improvements are not a sixth factor. However, Burbank significantly overlooks that we previously articulated the second factor as "whether the lessee made valuable permanent improvements." *Pardee*, 163 Wn.2d at 575. Consequently, the only time that this court interpreted the *Wharf* factors, we regarded valuable

11

permanent improvements to property as an inherent component of the inequitable forfeiture analysis.

In short, these are not two separate factors but one and the same: Whether an inequitable forfeiture would result depends on whether the lessee made valuable permanent improvements to the property in anticipation of exercising the option. Next, we must determine whether an inequitable forfeiture is a necessary condition before a trial court may award an equitable grace period.

2.      The second *Wharf* factor must be met before a trial court may grant an equitable grace period

Burbank contends that no other case analyzing the *Wharf* factors requires substantial permanent improvements before a trial court may grant an equitable grace period. However, we have implicitly treated an inequitable forfeiture as a necessary condition. Indeed, Borton persuasively argues that "[t]he common denominator in all of these opinions, whether relief is granted or denied, is that the party asking for a grace period must show it made a permanent or substantial improvement to the property that would be forfeited." Suppl. Br. of Resp't at 9-10.

This is because the primary justification for granting a grace period is "equity's abhorrence of a forfeiture." *Wharf*, 24 Wn. App. at 610. Indeed, Professor Corbin made clear that "'[w]here no inequitable forfeiture will occur, the same rule is applicable to an option contract as to a revocable offer; a time limit,

expressly stated, is controlling.'" *Id*. at 611 (quoting CORBIN ON CONTRACTS, § 35 at 146-47).

Burbank also asserts that our decision in *Pardee* supports its position because we remanded the question of whether Jolly was entitled to an equitable grace period to the trial court. However, our analysis began with a declaration that forfeitures are "'never enforced in equity'" and that "'to avoid the harshness of forfeitures . . . courts have frequently granted a "period of grace" to a purchaser before a forfeiture will be decreed.'" *Pardee*, 163 Wn.2d at 574 (internal quotation marks omitted) (quoting *Hyrkas v. Knight*, 64 Wn.2d 733, 734, 393 P.2d 943 (1964); *Moeller v. Good Hope Farms, Inc.,* 35 Wn.2d 777, 783, 215 P.2d 425 (1950)). After determining that the optionee would forfeit over $20,000 and 2,500 hours repairing the property, we remanded the issue to the trial court to consider whether the other *Wharf* factors also supported granting an equitable grace period. *Id*. at 576. *Pardee* therefore supports the conclusion that an equitable grace period is proper only when an inequitable forfeiture will result.

Following *Pardee*, the Court of Appeals twice upheld equitable grace periods after determining that valuable improvements to property would be forfeited. In *Cornish*, the court's analysis focused on the fact that "Cornish invested approximately $600,000 to remodel and improve the property. Such extensive improvements are easily adequate to constitute a forfeiture." *Cornish*,

158 Wn. App. at 219. The court then proceeded to consider the other *Wharf* factors, continuing, "[M]any of the factors we deemed important in *Wharf* are also present in this case." *Id*. Thus, while the court noted that other *Wharf* factors were met, the crux of its analysis focused on whether a forfeiture would result from losses related to valuable permanent improvements to the property.

Similarly, in *Recreational Equipment*, the Court of Appeals affirmed that a grace period was proper because the lessee "made substantial improvements to the premises . . . in expectation of exercising the third and fourth options." 165 Wn. App. at 563. Specifically, in analyzing whether an inequitable forfeiture would have occurred, the court reasoned that "this case falls squarely within the narrow exception to the general rule: where a lessee makes valuable improvements to a leasehold in expectation of exercising an option, equitable relief may be proper." *Id*.

By contrast, in *Heckman Motors*, the Court of Appeals held that a lessee who failed to timely renew an option could not be granted an equitable grace period because it "had not made, and would not forfeit, substantial valuable improvements of the sort present in *Wharf*." 73 Wn. App. at 88. Likewise, in *Lenci*, the Court of Appeals held that the lessee was not entitled to equitable relief because "[h]e cites no special circumstances such as permanent improvements to the property to justify the application of equitable principles." 30 Wn. App. at 803.

14

Notably, the court did not analyze any other *Wharf* factor in arriving at this holding.

These cases consistently demonstrate that equitable grace periods are appropriate only when a lessee shows that they would otherwise suffer an inequitable forfeiture of valuable permanent improvements to the property. Lessees who made that showing were granted grace periods, while those who failed to show an inequitable forfeiture were denied equitable relief.

Moreover, as a practical consideration, not requiring an inequitable forfeiture as a condition to granting an equitable grace period would effectively authorize trial courts to rewrite option contracts any time a lessee shows that their inadvertent and brief delay in exercising an option does not prejudice the lessor. Such a result undermines our principled determination that equitable relief is an extraordinary remedy that is available only in very limited circumstances.

Accordingly, we affirm the Court of Appeals and hold that valuable permanent improvements to property are required before a court may grant an equitable grace period.

Having determined that the proper standard of review is de novo and that valuable permanent improvements to property are required to grant an equitable grace period, we next consider whether Burbank was properly awarded an equitable grace period on summary judgment.

C.    The trial court did not have discretion to grant Burbank an equitable grace period because the second *Wharf* factor was not met

Burbank's chief arguments on appeal are that valuable permanent improvements are not required to find an inequitable forfeiture and that it is entitled to an equitable grace period because the first three *Wharf* factors are met: (1) Burbank's delay in exercising the option was inadvertent, (2) the loss of its hay crop constitutes an inequitable forfeiture, and (3) Borton was not prejudiced by the delay. With respect to the second factor, Burbank asserts that loss of equity in the property and its hay crop is sufficient to prove that an inequitable forfeiture would result.

However, as discussed above, we hold that a court has discretion to grant a lessee an equitable grace period only if the lessee can demonstrate that it would suffer an inequitable forfeiture because the lessee made valuable permanent improvements to the property. Consequently, Burbank's argument that it would suffer an inequitable forfeiture by "[forgoing] the value it would have gained by selling the property at market value in 2016" is unavailing. Pet. for Review at 8. On this point, the Court of Appeals properly determined that "[t]he cost of an option is not a component of an inequitable forfeiture." *Borton*, 9 Wn. App. 2d at 611. Likewise, although Burbank did not contend that the planting of its hay crop constituted a valuable permanent improvement to land, we note that planting crops as part of routine farming operations does not constitute a valuable permanent

16

improvement to property. This is particularly true where, as here, the crops had already been in rotation prior to the execution of the lease. Therefore, Burbank's inability to reap its hay crop, while unfortunate, does not amount to an inequitable forfeiture.

Accordingly, even assuming the first and third factors are met, Burbank does not make the required showing that it suffered an inequitable forfeiture. It is undisputed that Burbank made no valuable permanent improvements to the property and thus does not satisfy the second *Wharf* factor. We therefore affirm the Court of Appeals and hold that Burbank may not be granted an equitable grace period as a matter of law.

D.     Burbank is not entitled to attorney fees on appeal

Section 14 of the Agreement provides,

> In the event that any action is filed in relation to this lease agreement, the unsuccessful party in the action shall pay to the successful party, in addition to all the sums that either party may be called on to pay, a reasonable sum for the successful party's attorney fees.

Clerk's Papers at 15.

Pursuant to the Agreement, the trial court awarded Burbank reasonable attorney fees and costs. The Court of Appeals reversed the superior court fee award and granted Borton's request for fees. *Borton*, 9 Wn. App. 2d at 611. On appeal, both Burbank and Borton seek reasonable attorney fees and costs consistent with the Agreement and RAP 18.1(a). Because Borton is the prevailing

party, we grant Borton's request for attorney fees and costs and deny Burbank's.

RAP 18.1(a); *W. Plaza, LLC v. Tison*, 184 Wn.2d 702, 718, 364 P.3d 76 (2015).

CONCLUSION

Burbank fails to demonstrate that the Court of Appeals erred in applying a

de novo standard of review and requiring valuable permanent improvements to

property as a condition of granting an equitable grace period. Furthermore,

Burbank has not shown that it would suffer an inequitable forfeiture because it

made no valuable permanent improvements to the lease property. Accordingly, we

hold that 1) whether a trial court properly granted an equitable grace period as a

matter of law is a question of law that we review de novo, 2) the grant of an

equitable grace period on summary judgment is proper only when a lessee makes

valuable permanent improvements to property that would result in an inequitable

forfeiture if not granted a grace period, and 3) Burbank did not suffer an

inequitable forfeiture and therefore could not be granted an equitable grace period

as a matter of law. We therefore affirm the Court of Appeals on all issues and

grant Borton's request for reasonable attorney fees and costs.

_____ Yu, J.

WE CONCUR:

Stephens, C.J.      González, J.

Johnson, J.      Gordon McCloud, J.

     Montoya-Lewis, J

Owens, J.      Whitener, J.

19

*Borton & Sons, Inc. v. Burbank Properties, LLC*

No. 97690-2

MADSEN, J. (concurring)—I agree with the majority that an equitable grace period in this case is not warranted. As a matter of law, the equitable extension of time for a lessee to exercise an option to purchase property is proper only when that lessee makes valuable improvements to property that, without a grace period, would result in inequitable forfeiture. Accordingly, I agree that the second *Wharf* factor is not met. *Wharf Rest., Inc. v. Port of Seattle*, 24 Wn. App. 601, 610, 605 P.2d 334 (1979). I write separately to underscore the unique aspects of agricultural production in the context of equity and property. Specifically, beyond structural improvements, perennial crops *can* constitute valuable permanent improvements.

I share the majority's concern about deviating from the terms of a lease contract. *See* majority at 8-9. Only under exceptional circumstances should a court "relieve a party from its own negligent failure to timely exercise an option, when to do so might tend to introduce instability into business transactions and disregard commercial realities." *Wharf*, 24 Wn. App. at 610. Nevertheless, the narrow equitable exception may apply even where a lessee's improvement may not be structural in the traditional sense because

1

some crops constitute valuable permanent improvements. Thus, I would hold that valuable permanent improvements are not limited to buildings and traditional fixtures, but can include perennial crops. *See id*. at 612-15.

The *Wharf* court sought to balance the predictability of—and the freedom to—contract against "equity's abhorrence of a forfeiture." *Id.* at 610. Accordingly, the court carved out "very limited" circumstances in which equitable relief can be granted when a lessee fails to timely exercise an option to purchase land. *Id*. at 611. As to the second *Wharf* element, the court held that "[a]n inequitable forfeiture would have resulted had equity not intervened," as "permanent improvements had been made on the premises by the lessee with the intention of exercising its option and remaining on the premises." *Id*. at 612. As explained below, perennial crops can increase the value of land and indicate an intent of exercising an option to remain on the premises. Thus, such crops can be a valuable permanent improvement.

The law generally distinguishes between the ownership of the perennial plant—the roots that produce harvests for multiple years—and the crop, which consists of the matured crop. *See*, *e.g.*, *ABCDW LLC v. Banning*, 241 Ariz. 427, 433, 388 P.3d 821 (Ariz. Ct. App. 2016) (holding that rooted plants planted by a farmer during a lease were "fixtures" that became part of the realty belonging to the landlord, thus deauthorizing a farmer from destroying them); *Mattis v. St. Louis & S.F. R.R. Co.*, 138 Mo. App. 61, 119 S.W. 998 (1909) (distinguishing between the perennial root and the matured crop); *Gentry v. Alexander*, 311 Ky. 344, 346-47, 224 S.W.2d 143 (1949) (distinguishing

between the crop and the perennial root or plant that produces the crop). The perennial root, which may produce crops for multiple cycles, can improve the permanent value of land.

In Washington, this court has concluded that a permanent asparagus crop constitutes a valuable improvement to property. *Miller v. McCamish*, 78 Wn.2d 821, 823, 479 P.2d 919 (1971). In *McCamish*, a farmer agreed to move onto the defendants' land to work the farm for a specified wage. The defendants agreed to allow the farmer to purchase the farm after a period of employment, in which case the farmer "would receive, as credit toward the purchase price, one-third of the farm's increased value over $40,000." *Id.* at 822. "Prior to Miller's employment, the farm had not grown a permanent crop." *Id.* at 823. This court upheld the damages awarded to the plaintiffs for their one-third of the farm's increased value, which included "32 acres of permanent crop asparagus." *Id.* Though *McCamish* concerned an award of money damages, rather than equitable relief, the example is useful: this court has previously recognized that perennial crops can have significant value and increase the long-term value of realty.

Additionally, trees planted in an orchard may constitute valuable permanent improvements. "It is settled law that standing trees are part and parcel of the land in which they are rooted, unless they are nursery stock growing in the soil for sale and transplantation: [t]he fruit trees involved in this case were not nursery stock but had become part of the realty." *Dennison v. Harden*, 29 Wn.2d 243, 250, 186 P.2d 908 (1947) (citation omitted) (citing 42 AM. JUR. *Property* § 19, at 200-01 (1942)). The *Dennison*

3

plaintiff argued that the defendant breached an implied warranty after verbally promising to include 276 peach trees in a sale of land. We rejected the argument, reasoning that the trees became part of the real property and such an implied warranty therefore did not apply. *Id.* (comparing the peach trees to the condition of a storeroom and basement in a lease agreement in *York v. Steward*, 21 Mont. 515, 55 P. 29 (1898)).

Washington courts have also considered agricultural improvements when exercising equitable powers to avoid an inequitable forfeiture. *See*, *e.g.*, *Pierce v. Vanderwal*, noted at 87 Wn. App. 1026, 1997 WL 499943, at *1. In *Pierce*, the plaintiffs contracted to "farm Christmas trees on 19 acres owned by [the defendants]." *Id*. The plaintiffs "made substantial improvements to the leasehold, including removing junk and brush, plowing and fertilizing the fields, planting and replanting trees. Thus, they made significant, if unmeasured, contribution toward creating a standard Christmas tree crop on the [defendant's] land." *Id*. Near the termination of the lease, the plaintiffs had an option to renew but mailed their notice of renewal 40 days late. *Id*. While moot by the time of appeal, the trial court granted equitable relief to prevent the plaintiffs from forfeiting the value of the trees. "[T]he trial court concluded as follows: Although lease renewal provisions are usually construed strictly, the court can exercise equitable powers to avoid an inequitable forfeiture." *Id*. at *2 (citing *Wharf*, 24 Wn. App. at 612-13).

Here, the record does not indicate that Burbank Properties' owner, Eric Rogers, planted perennial crops. Rogers farmed early season potatoes on the property, which required rotating the potato crop with grass seed or timothy hay every two or three years.

4

Clerk's Papers at 128. These crops do not constitute valuable permanent property. Unlike perennial crops, harvesting potatoes involves digging up, uprooting, and destroying the plants. However, there could be a situation where a farmer plants an orchard on a 20-year lease but misses the deadline on an option to purchase. In such a case, it would be an inequitable forfeiture for the farmer to lose the value she created without the brief extension merely because the nature of her work required planting trees, rather than erecting a structure.

Though the record before us does not suggest that Burbank planted perennial crops, in considering what constitutes valuable permanent improvements, we must not overlook the nature of agricultural production in which valuable improvements may come in the form of a permanent crop. I would hold that valuable permanent improvements are not limited to buildings and traditional fixtures but can include perennial crops.

_Madsen, J._