Argued and submitted October 28, 2021; judgment reversed as to grant of specific performance, supplemental judgment reversed and remanded, otherwise affirmed March 30, 2022

SOUND-RITE PLASTICS, LTD.,
a Washington corporation,
*Plaintiff-Respondent,*

*v.*

William W. WRIGHT,
individually, and
William W. Wright, as Trustee of
the Voting Trust dated May 25, 2016,
*Defendant-Appellant.*

William W. WRIGHT,
individually, and
William W. Wright, as Trustee of
the Voting Trust dated May 25, 2016,
*Third Party Plaintiff-Appellant,*

*v.*

Janeanne UPP
and Dale Meyer, husband and wife,
*Third Party Defendants-Respondents.*

Deschutes County Circuit Court
17CV52881; A169842

509 P3d 159

This case involves a contentious dispute among shareholders of Sound-Rite Plastics, Ltd., that resulted in breach-of-contract claims being tried to a jury and equitable claims being tried to the court. The jury found in favor of the minority shareholder, William Wright, and it awarded damages in his favor. Nonetheless, on the equitable issues, the trial court—applying Washington law in accordance with the shareholders agreement—ordered Wright's shares to be redeemed and issued a declaratory judgment regarding Wright's obligations on certain promissory notes. The trial court awarded attorney fees and costs to both sides. On appeal, Wright argues that the trial court erred in ordering the redemption process because he had not breached or threatened to breach the shareholders agreement. He also challenges the declaratory judgment regarding his obligations under the promissory notes and the court's award of fees and costs. *Held*: The Court of Appeals agreed with Wright that the trial court's findings did not support an award of specific performance under Washington law, but the court rejected his argument that the trial court erred in declaring the parties' rights and obligations with regard to the promissory notes. The court reversed the supplemental judgment for attorney fees and costs, which was based in part on the court's order of specific performance.

Judgment reversed as to grant of specific performance; supplemental judgment reversed and remanded; otherwise affirmed.

Walter Randolph Miller, Jr., Judge.

Michael D. Franklin argued the cause for appellant. Also on the briefs was Lukins & Annis, P.S.

Robert A. Koch argued the cause for respondents. With him on the brief were Anna K. Sortun and Tonkon Torp LLP.

Before James, Presiding Judge, and Lagesen, Chief Judge, and Kamins, Judge.

JAMES, P. J.

Judgment reversed as to grant of specific performance; supplemental judgment reversed and remanded; otherwise affirmed.

**JAMES, P. J.**

This case involves a contentious dispute among shareholders of Sound-Rite Plastics, Ltd. (Sound-Rite) that resulted in breach-of-contract claims being tried to a jury and equitable claims being tried to the court. The jury found in favor of the minority shareholder, William Wright, and it awarded damages in his favor. Nonetheless, on the equitable issues, the trial court—applying Washington law in accordance with the shareholders agreement—ordered Wright's shares to be redeemed and issued a declaratory judgment regarding Wright's obligations on certain promissory notes. The trial court then awarded attorney fees and costs to both sides. On appeal, Wright argues that the trial court erred in ordering the redemption process because he had not breached or threatened to breach the shareholders agreement, which is a prerequisite for specific performance of a contractual obligation under Washington law. He also challenges the declaratory judgment regarding his obligations under the promissory notes and the court's award of attorney fees and costs. As explained below, we agree with Wright that the trial court's findings do not support an award of specific performance but reject his argument regarding the declaration of rights regarding the promissory notes. We therefore reverse the judgment as to the grant of specific performance, reverse and remand the supplemental judgment for attorney fees, which was based in part on the court's order of specific performance, and otherwise affirm.

Although there is much more to the dispute, an overview of the underlying events and relevant court filings is sufficient to frame the dispositive issues on appeal. Janeanne Upp and Dale Meyer, a married couple, owned a business based in Idaho, and they entered into an agreement with Wright whereby Wright and two other investors would pay them $3 million in exchange for a quarter of the business and Wright would become its president.

Sound-Rite, a Washington corporation, was formed as the vehicle for that transaction in April 2016. In all, the minority shareholders purchased 23,077 shares of Sound-Rite at $130 per share. Wright purchased most of those shares through two $1 million promissory notes to Upp and

Meyer, dated May 25, 2016, which would mature after five years or at an earlier date upon certain triggering conditions (including the "date on which all the Shares are purchased by a third party").

The shareholders' relationships to Sound-Rite were governed by a shareholders agreement. Paragraph 8 of that agreement gave Sound-Rite the option to redeem shares owned by the minority shareholders at "fair market value," and it required Sound-Rite to notify the shareholders in writing of the election. The agreement set forth a two-step process for determining "fair market value": Sound-Rite and its shareholders had to attempt to agree on the shares' fair market value within 30 days after the company exercised its redemption right. Then, if the parties could not reach an agreement, fair market value for the redeemed shares would be determined by a third-party appraiser. The agreement provided that it was to be governed by Washington law.

Wright was fired not long after starting his role as company president, and, on March 10, 2017, Sound-Rite notified minority shareholders that it intended to redeem their shares as of December 31, 2016, at a value of $89.91 per share. The minority shareholders rejected that valuation, and the parties moved to the appraisal process. That process ultimately yielded an appraisal from Lee Foster of BV Advisors. Foster used a valuation date of December 31, 2016, and he valued the shares at $151.81 per share as of that date.

Wright and the other minority shareholders objected to the appraisal and refused to sign the redemption agreement. They notified Sound-Rite of that refusal on November 17, 2017. Sound-Rite then filed an action against Wright in early December 2017 to compel the sale of his shares at $151.81 as set forth in Foster's valuation.

A series of counterclaims, third-party claims, and amendments followed. Wright sought a declaration that Foster's appraisal used the wrong valuation date—reaching back to December 31, 2016, to value the shares rather than valuing them as of the future date that the share purchase

would close. In Wright's view, that meant that Sound-Rite was required to restart the redemption process under paragraph 8 of the shareholders agreement, complete with a new appraisal if the parties could not agree on a fair market value. Wright also alleged that Sound-Rite, Upp, and Meyer (collectively, the Sound-Rite parties) had breached the shareholders agreement by trying to compel a redemption at a price substantially below fair market value.

Upp and Meyer then filed their own third-party counterclaims seeking a declaration that payment from Wright on their promissory notes would be due upon Sound-Rite's redemption of Wright's shares because Sound-Rite was a "third-party" for purposes of the triggering condition in the promissory notes. In addition, Sound-Rite amended its complaint to bring a breach-of-contract claim against Wright for waiting until November 17, 2017, well after Foster's appraisal, to dispute the December 31, 2016, valuation date.

The competing breach-of-contract claims were tried to a jury. After the jury retired but before it returned its verdict, the trial court stated that it was taking the equitable claims under advisement. The court explained that it expected that the jury's verdict would "shed some light on" those equitable claims. Counsel for the Sound-Rite parties reminded the court that there was also a separate claim for specific performance, and the court stated that it would be thinking about the effect that the jury's verdicts would have on the court's analysis of all the remaining claims.

The jury returned verdicts in Wright's favor. On Sound-Rite's claim for breach of contract, the jury answered "No" to the question "Did Mr. Wright commit a breach of the Shareholders Agreement in one or more of the ways that Sound-Rite claims?" On Wright's competing claim, the jury found that Sound-Rite breached the shareholders agreement and awarded him $25,000 in damages. (The jury also found in favor of Wright on claims of breach of fiduciary duty and shareholder oppression against Upp and Meyer and awarded damages of $1.)

After those verdicts, the court gave the parties an opportunity to file additional briefing and to submit their

own proposed findings of fact and conclusions of law under ORCP 62 on the equitable claims, "consistent with \*\*\* the jury's decisions on these issues that the parties understood relate to the remaining issues in the case."

The Sound-Rite parties filed their proposed findings of fact and conclusions of law first. Their proposed findings and conclusions included the following paragraphs regarding specific performance:

> "A.   The court may use its broad, equitable powers to order specific performance when its legal powers cannot adequately compensate a party's loss with money damages. *Crafts v. Pitts*, 161 Wash 2d 16, 23, 162 P3d 382, 386 (2007) (en banc). A trial court may order specific performance when (1) there is a valid binding contract; (2) *a party has committed or is threatening to commit a breach of its contractual duty*; (3) the contract has definite and certain terms; and (4) the contract is free from unfairness, fraud, and overreaching. *Id.* (citing *Egbert v. Way*, 15 Wash App 76, 79, 546 P2d 1246 (1976); 71 AM JUR 2d Specific Performance § 9 (2001)). *Each element is present here.*

> "\* \* \* \* \*

> "F.   Mr. Wright has made statements beginning in November 2017 and continuing through trial that he will not permit his shares to be redeemed for $151.81 per share.

> "G.   *Accordingly, Mr. Wright is threatening to breach the Shareholders Agreement, which permits Sound-Rite to redeem Mr. Wright's shares at any time. Therefore, the second element of specific performance is present.*"

(Emphases added.)

Wright then filed a response objecting to a number of the proposed findings and conclusions, including paragraphs F and G and the final sentence of paragraph A (that each element of a claim for specific performance was present). Wright argued that the claim for specific performance should be denied because "the jury's determination that [he] was not in breach due to his refusal to redeem the minority shares means that any continuation of that same conduct cannot possibly constitute a future breach of contract or a 'threatened' breach." In Wright's view, Sound-Rite was attempting to "nullify the jury's verdict" by shifting "its

claims (as pleaded) from a breach to now somehow characterizing Wright's nonbreaching conduct as a 'threatened' breach." But, according to Wright, the claim for specific performance was all that the court needed to address. He proposed a conclusion of law that the jury's verdict rendered moot the parties' competing claims for declaratory relief, because Sound-Rite needed to start the entire redemption process over.

The trial court apparently agreed with Wright about paragraphs F and G, because it did not include those paragraphs in the findings and conclusions that it ultimately adopted. However, the court nevertheless ordered specific performance, and it included paragraph A in its entirety, including the sentence that "[e]ach element is present here" for that claim. It also disagreed with Wright's contention that the claims for declaratory relief were moot. The court declared that neither of the parties' proposed valuation dates was correct, concluding instead that the correct date was the date Sound-Rite sent its notice to redeem—March 10, 2017. The court then ordered the parties to follow a process to negotiate a share price within 30 days of judgment, come up with a mutually agreeable appraiser if they couldn't agree on price, and then come before the court for the court to choose an appraiser if the other steps failed.

The court then granted the claim for declaratory relief by Upp and Meyer, declaring that Sound-Rite was not a party to the notes and that the full amount of principal and interest on the notes would be due "upon the purchase of Mr. Wright's shares if the shares are purchased back by Sound-Rite, which is a third party" to the notes.

Following the entry of judgment, the parties submitted competing petitions for attorney fees, which the court resolved pursuant to ORCP 68. The court ultimately awarded attorney fees and costs to both sides: $650,677.57 to the Sound-Rite parties and $520,328.65 to Wright.

On appeal, Wright first assigns error to the trial court's order of specific performance in the absence of any predicate breach or threatened breach of the shareholders agreement on his part. He again relies on *Crafts*, 161 Wash 2d

at 24, which states that, "because specific performance is uniquely a contract remedy, a trial court may order specific performance *only if* there is a valid binding contract; *a party has committed or is threatening to commit a breach of its contractual duty*; the contract has definite and certain terms; and the contract is free from unfairness, fraud, and overreaching" (citing *Egbert v. Way*, 15 Wash App 76, 79, 546 P2d 1246 (1976), and *Specific Performance*, 71 Am Jur 2d § 9 (2001) (emphasis added)); *see also Pardee v. Jolly*, 163 Wn 2d 558, 569, 182 P3d 967 (2008) ("Specific performance is a proper remedy only if a valid contract exists, a party has or is threatening to breach the contract, the terms of the contract are clear, and the contract is not the product of fraud or unfairness."); *State v. Ramos*, 174 Wash App 1042 (2013) (unpublished) ("Applying contract principles, specific performance should be available where a nonbreaching party is faced with a threatened breach. * * * If Mr. Ramos's request for a full resentencing violated his plea agreement, then the State's request that the court compel performance would be appropriate.").

        The Sound-Rite parties do not appear to dispute that Washington law requires that a party has committed or is threatening to commit a breach of its contractual duties before the remedy of specific performance can be granted. Instead, they contend that the trial court necessarily found the facts in a way that supported its conclusion that each element of specific performance "is present here" and that "[e]vidence supports the trial court's finding." That evidence, according to the Sound-Rite parties, is Wright's *post-litigation* conduct, which they assert is evidence that supports their claim that he "threatened" to breach the shareholders agreement notwithstanding the jury's verdict:

        "* * * Wright maintained throughout the litigation that he would sell back his shares only if Sound-Rite used a future valuation date for the appraisal. However, his own expert 'testified that using a future date is impossible.' Then, after the jury agreed with Wright on the impropriety of the Foster appraisal process, Wright argued that Sound-Rite should be barred entirely from exercising its right of redemption under the agreement. Put another way, Wright

asked the trial court to nullify his redemption obligations under paragraph 8 of the shareholder agreement."

(Record citations omitted.)[1]

There are significant problems with that reliance on post-litigation conduct in this case. First, and most importantly, the argument depends on an implicit finding that the trial court *rejected as an express finding*. As explained above, the Sound-Rite parties proposed, in paragraphs F and G, findings regarding "threatened" breach based on Wright's statements "beginning in November 2017 and continuing through trial that he will not permit his shares to be redeemed for $151.81 per share," but the trial court did not adopt those proposed findings and did not include any other findings expressly related to a threatened breach.

Second, we fail to see how Wright's litigation position regarding a valuation date—in the context of an action by Sound-Rite to force him to accept the company's valuation under the shareholders agreement—could constitute a "threatened breach" of that same agreement. In its claim for specific performance, Sound-Rite alleged that Wright "has unequivocally stated that he will not sign redemption documents or do anything else to allow the redemption to take place, *unless Sound-Rite will pay him more than $30 per share more than the appraised share price*" and sought an order compelling Wright to "take such actions as may be reasonably required to complete the closing of the Redemption consistent with paragraph 8 of the Shareholders Agreement *at $151.81 per share*"—a share price based on the December 31, 2016, valuation date. (Emphases added.) Wright contested the use of that valuation date and convinced the jury that he had not breached with respect to the redemption process involving Foster's valuation, and he sought declaratory relief to determine the enforceability of the shareholders agreement and clarify the parties' respective rights and obligations under that agreement. We do not

---

[1] The Sound-Rite parties also argue that Wright's assignment of error is moot, because he complied with the ordered sale after denials of his motion for a stay. That argument is untenable on any number of grounds, but at the very least, the court's ruling on specific performance was also a predicate for its award of attorney fees, which remains at issue. We proceed to the merits of the assignment.

see how Wright can be said to have breached or threatened to breach the contract in the process of successfully *enforcing it* against the Sound-Rite parties and successfully defending against their legal action based on Foster's valuation, and we will not attribute that finding to the trial court on this record in light of the fact that it expressly deleted findings to that effect.

As the court explained in *Carter v. Artcraft Photo-Engraving Co.*, 80 Pa D & C 266, 270-71 (Com Pl 1952), in the related context of anticipatory repudiation,

> "The base of [plaintiff's] idea is that defendant committed an 'anticipatory repudiation' by filing an answer that the contract was induced by fraud, that defendant's officers had no authority to sign it, that it was vague, that it was only a display of intention to make a later contract, and that defendant was not interested in buying plaintiff's stock. \*\*\* *We very much fear that if this were the law, no one could ever plead a defense to a contract without being guilty of an anticipatory repudiation.* Besides, [*Restatement of Contracts* section 318] clearly does not refer to pleaded defenses after suit is brought: it obviously refers to conduct of the parties out of which the litigation grew."

(Emphasis added.) Under Washington law, "an anticipatory breach occurs when one of the parties to a bilateral contract either expressly or impliedly repudiates the contract prior to the time of performance. A party's intent not to perform may not be implied from doubtful and indefinite statements that performance may or may not take place." *Wallace Real Estate Inv., Inc. v. Groves*, 124 Wash 2d 881, 898, 881 P2d 1010, 1019 (1994).

We therefore conclude that the trial court erred by ordering Wright to specifically perform in the absence of any finding that he had breached or threatened to breach the shareholders agreement. We appreciate that the trial court was faced with a contentious dispute and took an approach—ordering the parties to follow a redemption process laid out by the court and subject to its supervision—intended to provide prompt resolution to a dispute that had lingered and was likely to arise in the future. However, as we understand Washington law, that was not a permissible path in the absence of a breach or threatened breach

by Wright, even if some further dispute was likely.[2] There is a difference between a party asking the court to resolve a dispute over the parties' rights and obligations and that party "threatening to breach" the obligations that will be declared by the court. In this case, given the jury's verdict and the lack of any finding that Wright otherwise breached or threatened to breach the shareholders agreement, the court should not have granted the request to order his specific performance of that agreement.[3]

Next, we briefly address Wright's second assignment of error, in which he asserts that the trial court's ruling on the declaratory relief sought by Upp and Meyer regarding the promissory notes must be reversed as well. As described above, the trial court rejected Wright's argument that Upp and Meyer's claims were moot after the jury verdict, and it declared that a share redemption by Sound-Rite was a purchase by a third-party for purposes of triggering repayment of the notes; it also declared that the date of "purchase" in that circumstance would be "the date the redemption closes—not March 10, 2017."

As we understand Wright's argument on appeal, it is that the declarations about the terms of the promissory notes were dependent on there being a *court-ordered* redemption: "Here, the trial court concluded that the third condition—a share purchase by a third party—would be triggered by the new court-ordered redemption." Therefore, Wright argues, "the trial court's declaratory judgment is wholly dependent on the trial court's erroneous decree of specific performance."

---

[2] The court found that "[e]vidence and testimony at trial demonstrate that more dispute is likely relating to Sound-Rite's exercise of its redemption right where the Shareholders Agreement is silent as to the date for determining the fair market value of the redemption shares," but there is no finding that a breach by Wright was likely.

[3] It is possible that the trial court understood the parties to have waived any objection to the lack of a predicate breach. In its findings of fact and conclusions of law, the court states that cases discussed by Wright "do not address this situation where Sound-Rite and Wright agreed, in advance, to 'waive the claim or defense therein that such Party has an adequate remedy at law' when breach occurs." However, the text of the shareholders agreement does not support a contention that the parties waived objections beyond adequacy of a legal remedy.

We do not read the trial court's declarations about the promissory notes to be dependent on whether there was a court-ordered redemption. Rather, we understand the court to have declared the parties' respective rights and obligations in the context of a present dispute about the meaning of the terms of the promissory notes, whether the redemption was court-ordered or otherwise. Nor are we persuaded that the dispute over the meaning of terms in the notes was moot after the verdict, and we reject the second assignment without further discussion.

In his third assignment of error, Wright challenges the trial court's award of attorney fees and costs. The award of fees and costs does appear to have been predicated, at least in part, on Sound-Rite having prevailed on its claim for specific performance. We therefore reverse and remand with regard to the supplemental judgment for attorney fees and costs. *See* ORS 20.220(3)(a) (when an appeal is taken from a judgment to which an award of attorney fees and costs relates, the award of attorney fees and costs shall be deemed reversed if the appellate court reverses the judgment).

Judgment reversed as to grant of specific performance; supplemental judgment reversed and remanded; otherwise affirmed.