328 May 6, 2026 No. 377

***This is a nonprecedential memorandum opinion pursuant to ORAP 10.30 and may not be cited except as provided in ORAP 10.30(1).***

IN THE COURT OF APPEALS OF THE
STATE OF OREGON

SOUND-RITE PLASTICS, LTD.,
a Washington corporation,
*Plaintiff-Respondent,*

*v.*

William W. WRIGHT,
individually, and William W. Wright,
as Trustee of the Voting Trust dated May 25, 2016,
*Defendants-Appellants.*

William W. WRIGHT,
individually, and William W. Wright,
as Trustee of the Voting Trust dated May 25, 2016,
*Third-Party Plaintiffs-Appellants,*

*v.*

Janeanne UPP
and Dale Meyer, husband and wife,
*Third-Party Defendants-Respondents.*

Deschutes County Circuit Court
17CV52881; A182482

Walter Randolph Miller, Jr., Judge.

Argued and submitted December 20, 2024.

Michael D. Franklin argued the cause for appellants. Also on the briefs was Lukins & Annis, P.S.

Sasha A. Petrova argued the cause for respondents. Also on the brief were Anna Sortun, Samantha Taylor, and Tonkon Torp, LLP.

Before Ortega, Presiding Judge, Egan, Judge, and Hellman, Judge.

ORTEGA, P. J.

Affirmed.

**ORTEGA, P. J.**

This case, which "involves a contentious dispute among shareholders of Sound-Rite Plastics, Ltd. (Sound-Rite) that resulted in breach-of-contract claims being tried to a jury and equitable claims being tried to the court," is before us for a second time. *Sound-Rite Plastics, Ltd. v. Wright*, 318 Or App 588, 590, 509 P3d 159, *rev den*, 370 Or 455 (2022) (*Wright I*). William Wright, a former Sound-Rite minority shareholder, appeals a final judgment and money award entered on remand from *Wright I*. In two assignments of error, Wright contends that the trial court failed to effectuate our decision in *Wright I* when it determined that our reversal of Sound-Rite's specific performance claim did not affect the court's declarations of the parties' rights with regard to the shareholders agreement or its previous award of attorney fees and costs to the Sound-Rite parties. We conclude that Wright has not identified reversible error, and we therefore affirm.

We begin by summarizing the relevant undisputed facts recounted in our prior opinion. "Janeanne Upp and Dale Meyer * * * entered into an agreement with Wright whereby Wright and two other investors would pay them $3 million in exchange for a quarter of [Upp and Meyer's] business and Wright would become its president." *Wright I*, 318 Or App at 590. Wright became a minority shareholder of Sound-Rite when he purchased shares "through two $1 million promissory notes to Upp and Meyer, * * * which would mature * * * upon certain triggering conditions (including the 'date on which all the Shares are purchased by a third party')." *Id.* at 590-91. "The shareholders' relationships to Sound-Rite were governed by a shareholders agreement," which "gave Sound-Rite the option to redeem shares owned by the minority shareholders at 'fair market value'" and "set forth a two-step process for determining 'fair market value[.]'" *Id.* at 591.

"[O]n March 10, 2017, Sound-Rite notified minority shareholders that it intended to redeem their shares" at the valuation on a past date. *Id.* "The minority shareholders rejected that valuation" and the parties proceeded to determine the "fair market value" of the shares under the

two-step process set forth in the shareholders agreement. *Id.* After Wright and the other minority shareholders also objected to that determination of "fair market value" and "refused to sign the redemption agreement[,]" Sound-Rite "filed an action against Wright *** to compel the sale of his shares" under that fair-market-value determination; that is, Sound-Rite sued Wright for specific performance of a third-party redemption under the shareholders agreement. *Id.*

"A series of counterclaims, third-party claims, and amendments followed[:]" Wright sought a declaration of the parties' rights under the shareholders agreement—specifically, that the shareholders agreement required the "fair market value" to be based on "the future date that the share purchase would close"—and he claimed that "Sound-Rite, Upp, and Meyer (collectively, the Sound-Rite parties) had breached the shareholders agreement by trying to compel a redemption at a price substantially below fair market value." *Id.* at 591-92. "Upp and Meyer then filed their own third-party counterclaims seeking a declaration that payment from Wright on their promissory notes would be due upon Sound-Rite's redemption of Wright's shares because Sound-Rite was a 'third-party' for purposes of the triggering condition in the promissory notes." *Id.* at 592. Finally, "Sound-Rite amended its complaint to bring a breach-of-contract claim against Wright" for his objection to the fair-market-value determination. *Id.*

"The jury returned verdicts in Wright's favor" on the breach-of-contract claims, meaning the jury found that Wright did not breach the shareholders agreement as Sound-Rite claimed and that the Sound-Rite parties had breached the shareholders agreement by trying to compel Wright to sell his shares at the valuation on a past date. *Id.* Nevertheless, the court found in favor of Sound-Rite on its specific performance claim, meaning that it compelled Wright to redeem his shares under the shareholders agreement. The court also declared that, under the shareholders agreement, the correct share valuation date was "the date Sound-Rite sent its notice to redeem—March 10, 2017," and ordered the parties to follow the two-step process set forth in the shareholders agreement to negotiate the "fair market

value" of the shares based on that date. *Id.* at 594. Finally, as to Upp and Meyer's declaratory claim, the court declared "that Sound-Rite was not a party to the notes" and that Wright's payment on the notes was due upon Sound-Rite's third-party purchase of Wright's shares. *Id.* at 594.

In *Wright I*, Wright assigned three errors, challenging: (1) the judgment ordering specific performance of the share redemption process, (2) the declaratory judgment on Upp and Meyer's claim regarding his obligations under the promissory notes, and (3) the award of attorney fees and costs. *Id.* at 590. We concluded that "the trial court erred by ordering Wright to specifically perform in the absence of any finding that he had breached or threatened to breach the shareholders agreement." *Id.* at 597. But we rejected Wright's challenge to "the declaration of rights regarding the promissory notes" because we did "not read the trial court's declarations about the promissory notes to be dependent on whether there was a court-ordered redemption." *Id.* at 590, 599. Finally, we concluded that the award of fees and costs appeared "to have been predicated, at least in part, on Sound-Rite having prevailed on its claim for specific performance." *Id.* at 599. We therefore "reverse[d] the judgment as to the grant of specific performance, reverse[d] and remand[ed] the supplemental judgment for attorney fees, which was based in part on the court's order of specific performance, and otherwise affirm[ed]." *Id.* at 590.

On remand, Wright argued that our reversal of Sound-Rite's specific performance claim in *Wright I* meant that Sound-Rite "did not prevail on a single claim in this case," such that Sound-Rite was not entitled to any additional fees and costs regarding the decree of specific performance, and the court was required to revisit its prior fee and cost award to the Sound-Rite parties to partition those related to the share redemption process. However, Wright acknowledged that Upp and Meyer had prevailed on their declaratory judgment claim. Finally, Wright sought additional fees and costs incurred post-trial in effectuating the redemption of his shares, which he attributed solely to the court's erroneous grant of specific performance.

The Sound-Rite parties argued that "all of the rulings [the court] made on the meaning of the Shareholders

Agreement and the rights and the responsibilities of the parties under the Shareholders Agreement were affirmed" in *Wright I*—including *both* Upp and Meyer's claim for declaratory relief *and* Wright's claim for declaratory relief. In their view, the trial court had ruled in favor of the Sound-Rite parties "on each of those equitable claims," and, in its ruling, the court construed the shareholders agreement and declared that it "was an enforceable contract, that Sound-Rite's right to redeem the shares was unquestionable, and that March 10th, 2017, was the correct valuation date." The Sound-Rite parties pointed out that the trial court had expressly stated in its subsequent fee award that Sound-Rite had prevailed against Wright's claim for declaratory relief, and Wright did not challenge that ruling in *Wright I*. And because Wright had unsuccessfully sought to stay the judgment pending appeal, the redemption sale closed based on the March 10 valuation date. Thus, the Sound-Rite parties argued that "the declarations that mattered and that were enforced pursuant to the Shareholders Agreement after trial were not touched by the Court of Appeals," that *Wright I* did not impact those declarations, and that the court had discretion to award Sound-Rite all of its fees for prevailing solely on the claims for declaratory relief.

Wright responded that "Sound-Rite prevailed in Wright's declaratory relief request just like Sound-Rite prevailed on its claim for specific performance," which was reversed in *Wright I*, and that it was "absolutely preposterous" that Wright could not "unwind" the share redemption process after prevailing on appeal regarding specific performance. The court asked Wright if "you think I ordered the [March 10] date only so that I could give you a date to then specifically perform?" Wright responded affirmatively, and the court replied, "That's not why I did it."

The court ultimately ruled as follows:

"(1)  Wright prevailed on appeal as to the Court's decree of specific performance, but the date of valuation set by this Court for the court-ordered redemption (i.e., March 10, 2017) was affirmed by the Court of Appeals; and

"(2)  the fees, costs, and disbursements awarded to both parties in the Court's prior Supplemental Judgment and

Money Award (entered July 18, 2019) will not be revisited and remain unchanged. The Shareholders Agreement contains a prevailing party attorney fee, cost and expense provision.

"For the reasons above, Wright is entitled to an additional award of attorney fees as requested in Wright's Second Supplemental Statement in the amount of $72,737.00, and costs, expenses and disbursements in the amount of $5,911.31."

This appeal followed.

As noted, in two assignments of error, Wright contends that the trial court failed to effectuate our decision in *Wright I* when it determined that our reversal of Sound-Rite's specific performance claim did not affect the court's declarations of the parties' rights with regard to the shareholders agreement or its previous award of attorney fees and costs to the Sound-Rite parties. Wright's assignments of error both rely on the premise that our reversal of the specific performance claim necessarily required the court to "unwind" its order that Wright redeem his shares based on the March 10 valuation date. We disagree.

As we read the record, on remand the trial court adopted the Sound-Rite parties' position that *Wright I* affirmed the original judgment as to both declaratory judgment claims, including the court's declarations under the shareholders agreement that Sound-Rite was entitled to redeem Wright's shares and that March 10 was the correct valuation date. That is a plausible reading of the original judgment in light of our disposition in *Wright I*, and Wright has not persuaded us that our reversal of the decree of specific performance necessarily required the court to "unwind" the share-redemption process, particularly given that the redemption appears to have proceeded under the terms of the shareholders agreement as construed by the court in declaring the rights of the parties under that agreement. We therefore conclude that the trial court did not err when it determined on remand that our reversal of Sound-Rite's specific performance claim did not affect the court's declarations of the parties' rights with regard to the shareholders agreement or its previous award of attorney fees and costs to the Sound-Rite parties.

Affirmed.